CLERK
U.S. BANKRUPTCY COURT                    Return Date: _____ May 30th 2019
UNITED STATES BANKRUPTCY COURT  EASTERN DISTRICT OF
EASTERN DISTRICT OF NEW YORK      NEW YORK

------------------------------------------------------X    2019 MAY -1  P 12: 14

In re:

        Green Group 11 LLC                    RECEIVED  Case No.    19-40115-nhl
                                                        Chapter    11

                              Debtor(s)
--------------------------------------------------X

## NOTICE OF MOTION

        PLEASE TAKE NOTICE that upon the annexed application of

____Charles Zizi_____, a hearing will be held before the Hon.

____Nancy Hersey Lord_____, Bankruptcy Judge, to consider the motion for an Order

granting relief as follows:

        Dismiss The Bankruptcy Proceedings
        Compel Michael Khandorov to Abide By The Terms of Agreement
        Appoint A Receiver To Obtain Full Accounting of Rental Income
        Reverse Fraudulent Deed Transfer of 850 Greene Ave



Date and time of hearing: ___May 30, 2019   at 2:30PM___
Location: U.S. Bankruptcy Court
271-C Cadman Plaza East
Brooklyn, New York 11201-1800
Courtroom # __3577__, __3rd__Floor


Dated: __May 1st, 2019___

                                        _____
                                        Signature

                                        Print name: ___Charles Zizi_____
                                        Address: ___180-15 Jamaica Ave____
                                                 ___Jamaica, NY 11432_____
                                        Phone: ___212-365-4730_____
                                        Email: ___hans.c.zizi@phoenixnyllc.com___

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
In re:

**Green Group 11 LLC,**

Debtor.

-----------------------------------------------------------------------x

Chapter 11

Case No. 19-40115-nhl

## DISMISS THE BANKRUPTCY PROCEEDINGS INITIATED BY MICHAEL KHANDOROV ON BEHALF OF GREEN GROUP 11 LLC

Contrary to Mr. Khandorov's sworn statement; no notice was provided to Charles Zizi a member of the LLC.  In addition, Michael Khandorov claims there was a meeting of shareholders on January 8, 2019.  However, that is a blatant lie. The LLC has just 2 members (See exhibit 1).  At no time did Michael Khandorov contact me by phone, by email, or by mail to inform me of his decision to file for bankruptcy on a property where I am a part owner and the only mortgagee. In fact, I haven't communicated with Mr. Khandorov for over 18 months. They *intentionally misrepresented vital information to the court concerning the corporation by* falsely claiming sole ownership.

In his attempt to deceive the court, Mr. Khandorov claims he mailed me notices of his bankruptcy filing at 220 Greene Ave Brooklyn NY 11238.  However, he knows full well that I don't live there because he rented out both apartments and is collecting rent on both.  In addition, he knows my mailing address, having previously served me court papers for different cases.

Michael Khandorov has no authority to negotiate, act on my behalf, or intervene with US Bank or  Fay Servicing as I am the only mortgagee on the property. I never gave Michael Khandorov or his agents, or attorneys the right to contact the Mortgage Holder or the Servicing company to discuss my mortgage with the Lender.

I oppose this bankruptcy filing, because I want to negotiate with the lender, and I cannot proceed because of this fraudulent bankruptcy filing.

I respectfully ask the court to dismiss this bankruptcy filing and sanction all parties involved in this attempt to intentionally mislead  the court.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
In re:

**Green Group 11 LLC,**

Debtor.
----------------------------------------------------------------------x

Chapter 11

Case No. 19-40115-nhl

## COMPEL MICHAEL KHANDOROV AND GREEN GROUP 11 LLC TO ABIDE BY THE TERMS OF THE AGREEMENT SIGNED WITH CHARLES ZIZI

On December 24,2015 Charles Zizi and Michael Khandorov entered into an agreement ( See Exhibit 2) whereby In Pertinent part:

a.  Any party who breaks the agreement relinquishes 25% of their share to the non-violating party.(See Exhibit 3)

    Michael Khandorov violated our agreement by surreptitiously transferring the deed to 850 Greene Ave to himself.  Attached are the deed transfers I executed transferring the deeds to Greene Group 11 LLC, the corporation formed for the joint venture. (See Exhibite 4)

    Michael Khandorov fraudulently obtained ownership of 850 Greene Ave Brooklyn, NY 11220 by transferring the deed to a corporation that he individually controlled(See Exhibit 5)

b.  In addition, contrary to our agreement Michael Khandorov kept all the rent monies collected and refused to cure the breach, despite my attorney sending him a letter warning him that he violated the terms of our agreement and was in default. (See Exhibit 6)

c.  I respectfully ask the court to find Mr. Khandorov in breach of our agreement and award me 25% of his shares making me the Managing Partner of Green Group 11 LLC with 65% of the shares.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:

**Green Group 11 LLC,**

Debtor.
------------------------------------------------------------------x

Chapter 11

Case No. 19-40115-nhl

## REVERSE THE FRAUDULENT DEED TRANSFER OF 850 GREENE AVE BROOKLYN, NY 11221

The transfer was fraudulently obtained by Mr. Khandorov.  Specifically, when we signed the agreement, I also executed a deed transfer to the entity that was created for our transaction, namely Green Group 11 LLC.  Mr, Khandorov and I agreed to transfer the deeds to Green Group 11 LLC. (See exhibit...)

Mr. Khandorov surreptitiously and illegally transferred the deed for 850 Greene Ave to a corporation that only he controls. His actions violated the terms, intention and spirit of our agreement.

My attorney was not present during the deed transfer. Mr. Khandorov took advantage of the situation and my poor eyesight to transfer the deed to himself.

Once my attorney realized that Michael Khandorov defrauded me, he immediately notified Mr. Khandorov' s attorney, but the deed was never reversed. (See Exhibit ..)

I respectfully ask the Court to order the deed be transferred to Green Group 11 LLC, the corporation that Mr. Khandorov and I both control.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
In re:

                                                          Chapter 11

**Green Group 11 LLC,**
                                                          Case No. 19-40115-nhl

Debtor.
-------------------------------------------------------------------------x


## APPOINT A RECEIVER TO OBTAIN A FULL ACCOUNTING OF RENTAL INCOME COLLECTED BY MICHAEL KHANDOROV FROM 220 GREENE AVE BROOKLYN NY 11238

I respectfully request the Court appoint a receiver to demand a full accounting of the 31 months of rental income which Mr. Khandorov has unlawfully been collecting and keeping. Specifically, Mr. Khandorov has been collecting approximately $7,000.00 monthly in rental income for the 2 apartments since September 2016 until present.

Under the terms of our agreement, Mr. Khandorov is obligated to pay me 40% of the proceeds. To date, Mr. Khandorov has collected approximately $217,000.00 in rental income of which I am entitled to 40%. Said amount totals approximately $86,800.00

Once a full accounting has been provided, compel Mr. Khandorov to immediately pay me my 40% share of the rental income he has collected, which amounts to approximately $86,800.00

I have attempted to resolve the dispute amicably to no avail. In July of 2017, my attorney sent Mr. Khandorov a demand for an accounting of rental income received. In response, Mr. Khandorov refused to pay me my share of the rental income, and emailed me an inflated invoice claiming that he spent over $36,000.00 in repairs and maintenance in the space of 11 months( See Exhibit 7)

Despite pocketing all the rent proceeds, Mr. Khandorov has not paid the mortgage, property taxes, water and sewage bills, or insurance on the building and has placed the property in a further precarious position.

If this Court allows this bankruptcy filing to proceed, I ask this Court to add me to the list of creditors.  (Please see Exhibit 8)

EXHIBIT 1

## OPERATING AGREEMENT

**THIS OPERATING AGREEMENT** is made effective by the undersigned as of this *14* day of ~~December~~, 201~~8~~ *MK*
~~January~~

### I.    FORMATION

1.1    The undersigned have formed a limited liability company under the laws of the State of New York by filing on December 3, 2015 articles of organization with the Secretary of State of New York.

1.2    The name of this Company is **Green Group 11 LLC.**

1.3    The purpose for which this Company is formed to purchase and manage the premises located at **220 and 850 Greene Avenue, Brooklyn, New York** (the "Premises") and to engage in any lawful act, business or activity for which limited liability companies may be formed under the laws of the State of New York and to do any and all other things determined by the Managers to be necessary, desirable or incidental to the foregoing purpose.

1.4    The term of the Company shall become effective on the date the articles of organization are filed with the Secretary of State of New York, and shall continue for a period of one hundred (100) years from the date hereof, unless the Company is dissolved earlier pursuant to the provisions of this Agreement or as provided in the Statutes of the State of New York.

1.5    The location of the principal place of business of the Company is 1202 Halsey Street, Brooklyn, New York. The Managers may change the principal place of business and establish additional places of business as they deem necessary or desirable to conduct the business of the Company.

1.6    The Company's agent for service of process shall be Michael Kandhorov, who is located at the following address: 1202 Halsey Street Brooklyn, New York 11207, or such other agent as the Managers may designate from time to time.

1.7    The capital contributions of the members are as follows:

Michael Kandhorov- $100,000 (reserved solely for the purchase of the 220 and 850 Greene Avenue)

Charles Zizi- cooperation, assistance, and aid ("sweat equity")

### II.    MANAGEMENT

2.1    The Manager is Michael Kandhorov. He and all subsequent Managers shall be Members and shall be solely responsible for the management of the Company's day to day business. He shall possess all rights and powers generally conferred by law and all rights and powers that are necessary, advisable or consistent in connection therewith and with the provisions of this Agreement. A majority vote of the Managers shall bind all of the Managers with respect to any major decisions. The Managers shall also be vested with all specific rights and powers required for or appropriate to the management, conduct or operation of the business of the Company.  Except for distributions made to Members as set forth in this Agreement and any fees

1

for specific management services, the Managers shall receive no compensation from the Company for their actions taken as Managers pursuant to this Agreement.

2.2    The Managers shall serve as such until resignation, death or a judicial adjudication of incompetency, or until the remaining Managers select a new Manager, or if a new Manager is not chosen, until the aggregate of members holding Seventy Percent (70%) of the equity interest in the Company (as shown on Exhibit A) elect a new Manager or Managers at a meeting called by the Members or Managers for such a purpose

2.3    Rights and powers of the Managers, by way of illustration but not by way of limitation, and in which event the approval must be obtained by a majority of the managers and shall include the right and power to:

(A)    Authorize or approve all actions with respect to distribution of funds and assets in kind of the Company; acquire, secure or dispose of investments, including, without limitation, selling and otherwise disposing of assets of the Company, borrowing funds, executing contracts, bonds, guarantees, notes, security agreements, mortgages and all other instruments to effect the purposes of this Agreement; and execute any and all other instruments and perform any acts determined to be necessary or advisable to carry out the intentions and purposes of the Company.

(B)    Subject to the limitations imposed by this Agreement, admit additional Members in substitution of Members disposing of their interest in the Company.

(C)    Perform any and all acts necessary to pay any and all organizational expenses incurred in the creation of the Company and in raising additional capital, including, without limitation, reasonable brokers' and underwriters' commissions, legal and accounting fees, license and franchise fees (it being understood that all expenses incurred in the creation of the Company and the commencement of the Company business shall be borne by the Company); and compromise, arbitrate or otherwise adjust claims in favor of or against the Company and to commence or defend against litigation with respect to the Company or any assets of the Company as deemed advisable, all or any of the above matters being at the expense of the Company; and to execute, acknowledge and deliver any and all instruments to effect any and all of the foregoing.

(D)    Purchase goods or services from any corporation or other form of business enterprise, whether or not such corporation or business enterprise is owned or controlled by, or affiliated with, the Managers or Members, including management services at the usual and customary rates prevailing in the management industry from time to time for similar services.

(E)    Establish Company offices at such other places as may be appropriate, hire Company employees and consultants, engage counsel and otherwise arrange for the facilities and personnel necessary to carry out the purposes and business of the Company, the cost and expense thereof and incidental thereto to be borne by the Company.

2.4    The Managers shall manage or cause to be managed the affairs of the Company in a prudent and businesslike manner and shall devote such time to the Company affairs as they shall, in their discretion exercised in good faith, determine is reasonably necessary for the conduct of such affairs; provided, however, that it is expressly understood and agreed that the Managers shall not be required to devote their entire time or attention to the business of the Company.   In carrying out their obligations. the Managers shall:

(A)    Obtain and maintain such public liability, hazard and other insurance as

2

may be deemed necessary or appropriate by the Managers, but in any event in an amount sufficient to replace the building(s), together with improvements, and personal property comprising part of the Company's assets.

(B)      Deposit all funds of the Company in one or more separate bank accounts, using such banks or trust companies as the Managers may designate (withdrawals from such bank accounts to be made upon such signature or signatures as the Managers may designate).

(C)      Maintain complete and accurate records of all properties owned or leased by the Company and complete and accurate books of account (containing such information as shall be necessary to record allocations and distributions), and make such records and books of account available for inspection and audit by any Member or his duly authorized representative (at the expense of such Member) during the regular business hours and at the principal office of the Company.

(D)      Prepare and distribute to all Members tax reporting information.

(E)      Notify all Members of receipt of any notice of default from any lender, within ten (10) days after receipt of such notice.

(F)      Cause to be filed such certificates and do such other acts as may be required by law to qualify and maintain the Company as a limited liability company under all applicable state laws.

(G)      Maintain a list, in alphabetical order, of all current Members and past Members, together with the mailing address of each Member.

(H)      Maintain copies of the Articles of Organization, any amendments thereto and powers of attorney, if any, pursuant to which the execution of the Articles of Organization have occurred.

(I)      Maintain copies of present and past documents relating to the operation and business of the Company.

(J)      Finance all of the litigious and all other matters (legal or not) of the company using solely their personal finances, but which the Company shall reimburse either after the sale of either one of the properties or at the time of dissolution.

2.5      In carrying out their duties hereunder, the Managers shall not be liable to the Company nor to any Member for their good faith actions or failure to act, nor for any errors of judgment, nor for any act or omission believed in good faith to be within the scope of authority conferred by this Agreement, but only for their own willful or fraudulent misconduct in the performance of their obligations under this Agreement, or for gross negligence or willful breach of their fiduciary duties under this Agreement.   The receipt of advice of counsel that certain acts and omissions are within the scope of authority conferred by this Agreement shall be conclusive evidence of good faith; however, good faith may be determined without obtaining such legal advice.

The Company does hereby indemnify and hold harmless the Managers and their agents, officers and employees as to third parties against and from any personal loss, liability or damages suffered as a result of any act or omission which the Managers believed, in good faith, to be within the scope of authority conferred by this Agreement, except for willful or fraudulent misconduct, gross negligence or willful breach of fiduciary duties, but not in excess of the capital contributions of all Members. Notwithstanding the foregoing, the Company's indemnification of the Managers

3

and their agents, officers and employees as to a third party is only with respect to such loss, liability or damage which is not otherwise compensated for by insurance carried for the benefit of the Company. Insurance coverage for public liability, and all other insurance deemed necessary or appropriate by the Managers to the business of the Company, shall be carried in such amounts and of such types as shall be determined by the Managers, subject to Article 2.4(A).

      2.6    No financial institution or any other person, firm or corporation dealing with the Managers shall be required to ascertain whether the Managers are acting in accordance with this Agreement, but such financial institution or such other person, firm or corporation shall be protected in relying upon the deed, transfer or assurance of, and the execution of such instrument or instruments by, the Managers.

      2.7    The Members hereby acknowledge that the Managers may, from time to time, engage in business enterprises similar to the business of the Company and competitive with the business of the Company. The Managers may engage in such similar and competitive enterprises without restriction and have no obligation to account to the Company nor to the members for such activities.

## III.    MEMBERS

      3.1    The Members are listed on Exhibit A, which is attached hereto and made a part hereof. Exhibit A shall reflect the Pro Rata interests of each Member, as determined by, cash contributed, the value of property contributed and/or the value of services contributed, and each Member's percentage ownership of the Company.

      3.2    Except as otherwise specifically provided in this Agreement to the contrary, no Member shall have the right:

      (A)    To take part in the control of the Company business or to sign for or to bind the Company, such power being vested in the Managers.

      (B)    To have his capital contribution repaid except to the extent provided in this Agreement.

      (C)    To require partition of the Company's property or to compel any sale or appraisal of the Company's assets.

      (D)    To sell or assign his interest in the Company or to constitute the vendee or assignee thereunder, except as provided in this Agreement.

      (E)    To voluntarily withdraw as a Member from the Company.

      3.3    No member shall be personally held accountable for any of the debts, losses, claims, judgments or any of the liabilities of the Company beyond the Member's contributions to the capital of the Company. except as provided by law.

## IV.    MEETINGS OF MEMBERS

      4.1    *Annual Meeting.*  The annual meeting of the Members of the Company, for the consideration of reports to be laid before such meeting and for the transaction of such other business as may properly be brought before such meeting, shall be held at the principal office of

the Company in the City of New York in Brooklyn County, State of New York, as may be designated by the Managers and specified in the notice of such meeting. Each such meeting shall be held on the last Tuesday of each September, if not a legal holiday, and, if a legal holiday, then on the next succeeding business day.

4.2 *Special Meetings.* Special meetings of the Members of the Company may be held on any day, when called by the Mangers, or by the Members who hold at least thirty percent (30%) of the equity of the Company (as shown on Exhibit A). Upon written request delivered either in person or by certified mail, return receipt requested, to the Managers by any Members entitled to call a meeting of Members, such Managers shall forthwith cause notice to be given to the Members entitled to such notice. The meeting must be held on a date not less than ten (10) nor more than sixty (60) days after the receipt of such request, as the Managers or Members may fix. If such notice is not given within twenty (20) days after the delivery or mailing of such request, the person or persons calling the meeting may fix the time of the meeting and give notice thereof in the manner provided for by law or this Agreement, or cause such notice to be given by any designated representative. Each special meeting shall be called to convene between 8:00 a.m. and 6:00 p.m., and shall be held at the principal office of the Company.

4.3 *Notice of Meetings.* Not less than ten (10) nor more than sixty (60) days before the dated fixed for a meeting, written notice stating the time and place of the meeting (and, in the case of a special meeting, the purposes of such meeting) shall be given.

The notice shall be sent by personal delivery or by certified mail, return receipt requested, to each Member entitled to notice of the meeting who is a Member of record as of the day preceding the day on which notice is given, or, if a record date is duly fixed, as of that date. If mailed, the notice shall be addressed to the members at their respective addresses as they appear in the records of the Company.

4.4 *Quorum; Adjournment.* Except as may otherwise be provided by law, the Articles of Organization or this Operating Agreement, at any meeting of the Members, the holders of a majority of the capital of the Company, either present in person or by proxy, shall constitute a quorum for such meeting.

4.5 *Proxies.* Members entitled to vote may vote in person or by proxy. The person appointed as proxy need not be a Member. Unless the writing appointing a proxy otherwise provides, the presence at a meeting of the person who appointed a proxy shall not operate to revoke the appointment. Notice to the Company, in writing or in open meeting, of the revocation of the appointment of a proxy shall not affect any vote or action previously taken or authorized.

4.6 All votes of Members shall be in accordance with their then existing percentage of capital of the Company.

## V.   PROFITS, LOSSES AND ACCOUNTING

5.1 *Allocation of profits and losses:*

(A)    Except as otherwise provided herein, net profits and losses of the Company (including profits and losses attributable to the sale, refinance or other disposition of all or any portion of the Company's property) shall be first allocated among or borne by the Members to reduce the balance of Members Initial Capital contribution by one hundred percent. All net profits and losses above the Members initial Capital contribution shall be allocated in the percentages listed in Exhibit A, which is attached hereto and made a part

hereof, or in accordance with their equity interest in the Company, as those may change as provided herein.

(B)    Notwithstanding any provision of this Agreement to the contrary, to the extent required by law, income, gain, loss and deduction attributable to property contributed to the Company by a Member shall be allocated among the Members so as to take into account any variation between the tax basis of the property and the fair market value thereof at the time of contribution, in accordance with the requirements of Section 704(c) of the Internal Revenue Code of 1986 (the "Code"), as amended, or its counterpart in any subsequently-enacted Internal Revenue Code, and the applicable Treasury Regulations (the "Regulations") thereunder.

(C)    Company profits, losses and gains shall be allocated to the Members in accordance with the portion of the year during which the Members have held their respective interests.  All items of income and loss shall be considered to have been earned ratably over the fiscal year of the Company, except that gains and losses arising from the disposition of assets shall be taken into account as of the date thereof.

(D)    Notwithstanding any provision of this Agreement to the contrary, in the event the Company is entitled to a deduction for imputed interest under any provision of the Code on any loan or advance from a Member, such deduction shall be allocated solely to such Member.

(E)    Notwithstanding any provision of this Agreement to the contrary, to the extent the payment of any expenditure by the Company is treated as a distribution to a Member for federal income tax purposes, there shall be a gross income allocation to such Member in the amount of such distribution.

(F)    Notwithstanding any provision of this Agreement to the contrary, if items of income or gain to be allocated include income or gain treated as ordinary income for federal income tax purposes because they are attributable to the recapture of depreciation under Section 1245 or 1250 of the Code, then such income or gain, to the extent treated as ordinary income, shall be allocated to, and reported by, the Members in proportion to their then respective cumulative allocation of depreciation.

(G)    Nothwithstanding any provision of this Agreement to the contrary, all members other than the managers shall have a distribution preference in 100% of all distributions made by the Company, including distributions made pursuant to Article VIII hereof, until such members have received a distribution in an amount equal to an interest rate of ten percent (10%) on the current balance of their initial capital contributions.  This distribution preference shall terminate on the seventh anniversary of the date hereof.

5.2    *Accounting:*

(A)    The Company books shall be kept on the accrual basis and in accordance with reasonable accounting principles consistently applied.

(B)    The fiscal year of the Company shall end on December 31.

(C)    The terms "net profits" and "net losses," as used herein, shall mean the net amount of the Company's profits and losses, as determined for federal income tax purposes, and shall also include each Member's share of income described in Section 705(a)(1)(B) of the Code, any expenditures described in Section 705(a)(2)(B) of the Code, any expenditures described in Section 709(a) of the Code which are not deducted or amortized in accordance with Section 709(b) of the Code, basis adjustments required

6

pursuant to former Section 48(q) of the Code, and losses not deductible pursuant to Section 267(a) or 707(b) of the Code.

5.3     *Member's Capital Accounts:*

(A)     There shall be maintained a capital account for each Member in accordance with this Article 5.3.   The amount of each Member's contribution of cash, property and/or services to the capital of the Company shall be credited to such Member's capital account. From time to time, but not less often than quarterly, each Member's share of profits, losses and distributions shall be credited or charged, as the case may be, to such Member's capital account.   The determination of a Member's capital account, and any adjustments thereto, shall be made in a manner consistent with tax accounting and other principles set forth in Section 704 of the Code and applicable Regulations thereunder.

(B)     If, at any time, the Company shall suffer a loss as a result of which the capital account of any Member shall be a negative amount, such loss shall be carried as a charge against that Member's capital account, and that Member's share of subsequent profits of the Company shall be applied to erase such capital account deficit.

(C)     Immediately following the transfer of any interest in the Company, the capital account of the transferee-Member shall be equal to the capital account of the transferor-Member attributable to the transferred interest.

(D)     For the purposes of computing the amount of any item of income, gain, deduction or loss to be reflected in the Member's capital account, the determination, recognition and classification of any such item shall be the same as its determination, recognition and classification for federal income tax purposes, taking into account any adjustments required pursuant to Section 704 of the Code and the applicable Regulations thereunder.

## VI.    TRANSFER OF MEMBER'S INTEREST

6.1     Should a Member desire to sell, assign or exchange all or any part of his interest in the Company to any person seeking to become a substituted Member (or, in the event of a transfer for no consideration, such as gift or bequest), such Member (hereinafter "assignor") who desires to assign all or any part of his interest in the Company shall have the right to transfer to another the whole or any part of such interest, except as set forth in this Agreement.

6.2     If the Member desires to sell or assign all or a portion of his interest in the Company, as set forth in Article 6.1, he shall first confirm offer the same, in writing, for fair market value to the Members, who shall have thirty (30) days after receipt of such offer to accept or reject the offer.   If more than one Member accepts such offer, the interest being offered shall be allocated among the accepting Members in proportion to the size of their respective capital accounts.

If the offer is rejected, in whole or in part, then the Members shall sell the Premises for fair market value.

6.3     No assignment of any Member's interest in compliance with this Article VI, even if it results in the substitution of the assignee as a Member herein, shall release the assignor from those liabilities to the Company which survive such assignment.

6.4     Any assignment by a Member of all or any part of his interest in the Company shall be subject to the following:

(A)     The assignment instrument shall be in form and substance satisfactory to the Managers.  Among the reasons for which consent may be withheld by the Managers is that they have determined, in their sole discretion, that such substitution may: (i) have an adverse effect on the legal status of the Company under state or federal law or both; or (ii) have an adverse effect on the company in the transfer under state or federal law or both. The request for consent to sales or assignments shall contain a copy of all instruments and documents to be utilized in the transfer and shall be made by certified or registered mail, return receipt requested, sent to the Managers at least sixty (60) days prior to the proposed date of transfer.  Any additional information requested by the Managers, including any information relative to the assignee, shall be promptly furnished by the requesting assignor, and no decision need be reached by the Managers until such information is furnished.

(B)     The assignee shall have submitted his written acceptance and adoption of all the terms and provisions of this Agreement, including any and all amendments to this Agreement to be made subsequent to the assignment.

(C)     The assignor shall have paid, or obligated himself to pay, as the Company may determine, all reasonable expenses connected with such transfer, including, but not limited to, the cost of preparing and filing any amendment to this Agreement necessary to effectuate the transfer.

6.5     No Member's interest in the Company has been registered under the *Securities Act of 1933*, as amended (the "Act").  Notwithstanding any other provisions in this Agreement, no Member's interest may be offered for sale, sold, transferred or otherwise disposed of unless:

(A)     such interest is registered under the Act;

(B)     at the expense of the transferring Member, the Company receives an opinion of counsel letter, satisfactory to the Company, to the effect that such transfer is exempt from registration under the Act and is in compliance with all applicable federal securities laws and regulations; or

(C)     the Company receives a "no-action" letter from the staff of the Securities and Exchange Commission ("SEC"), satisfactory to the Company, to the effect that the transfer is exempt from registration.

## VII.    DISSOLUTION AND TERMINATION

7.1     Upon the occurrence of the following events, the Company shall be dissolved:

(A)     the death, retirement, resignation, expulsion, bankruptcy or dissolution of a Member, or any other occurrence which terminates a Member's membership in the Company, except where the Members, other than the effected Member, obtain a majority to continue the business of the Company;

(B)     the term of the Company expires;

(C)     the Managers sell or transfer substantially all of the assets of the Company;

(D)     the Company ceases its business operations; or

(E)     the Members unanimously vote to dissolve and terminate the Company.

8

7.2    Upon the death or incompetency of a Member, and in the event the Members continue the business under Article 7.1(A), the Member's personal representative, executor or administrator shall have all of the rights of a Member for the purpose of managing or settling his estate, as well as such power as the decedent or incompetent possessed to designate an assignee of his interest in the Company and to join with such assignee in following the procedures contained in this Agreement so that the assignee may become a Member.

7.3    In the event of the dissolution of the Company, the business and affairs of the Company shall continue to be governed by this Agreement during the winding up of the Company's business and affairs.

## VIII.  LIQUIDATION

8.1    Upon the dissolution and/or termination of the Company, the Managers shall proceed with the liquidation of the Company and sale of its assets.  The proceeds of such liquidation shall be applied and distributed in the following order or priority:

(A)    to the payment of the debts and liabilities of the Company (other than any loans or advances that may have been made by the Members to the Company, which shall take precedence over the company's' debts and liabilities) and expenses of liquidation;

(B)    to the payment of any loans or advances made to or for the benefit of the Company by a Member, or for any compensation owed to any of the Managers, but if the amount available for repayment shall be insufficient, then the amount available shall be distributed among the applicable Members through the use of a fraction whose numerator is the amount owed to a single member and whose denominator is the total amount owed to all members (thus, for example, if Member A were owed $2,000 and Member B were owed $1,000, and the amount available to compensate them was $600, then Member A would receive $400 (2/3 of $600) and Member B would receive $200 (1/3 of $600));

(C)    to the setting up of any reserves which the Managers may deem reasonably necessary in order to meet any contingent or unforeseen liabilities or obligations of the Company arising out of, or in connection with, the business of the Company.  Said reserves shall be paid over by the Managers to any financial institution, as escrow agent, with trust authority in the county in which the principal accounting records of the Company have been maintained in order to be held by it for the purpose of disbursing such reserves in payment of any of the aforementioned contingencies or liabilities; and at the expiration of such period as the Managers shall deem advisable, the financial institution shall distribute the balance remaining in the manner provided in this Article 8.1 and in the order named above; and

(D)    to the payment of the balance, if any, of the respective capital accounts of the Members, if any, subject however, to the distribution preferences established pursuant to Article 5.1(G) hereof.

8.2    When all of the acts provided for in Article 8.1 have been accomplished, the Managers shall file such Articles of Dissolution and any other certificate required in the State of New York and in any other state that may be required by law.

## IX.    AMENDMENT OF THE AGREEMENT

9

9.1    This Agreement may be amended by the Managers without the approval of the Members, provided that such amendment is:

(A)    solely for the purpose of clarification and does not change the substance hereof;

(B)    for the purpose of substituting a Member in accordance with the provisions of this Agreement;

(C)    merely an implementation of the terms of this Agreement; or

(D)    in the opinion of counsel for the Company, necessary or appropriate to satisfy current requirements of the Internal Revenue Code of 1986, as amended, with respect to limited liability companies, or any federal or state securities laws or regulations.

Any amendment made pursuant to (A) or (C) may be made effective as of the date of this Agreement. All Members shall be notified as to the substance of any such amendment to this Agreement and, upon request, shall be furnished a copy thereof.

9.2    All other amendments to this Agreement shall require the approval of Members holding at least seventy percent (70%) of the equity in the Company (as shown in Exhibit A).

## X.    NON-DISCLOSURE

10.2    The parties agree to perform their obligations under this agreement in secrecy. They further agree that during the life of this agreement and through and including the conveyance of the premises the

10.2.1    use of any confidential information for personal pecuniary gain of any sort directly or indirectly other than for or on behalf and benefit of this agreement and in furtherance of the terms of this agreement is strictly prohibited and

10.2.2    disclosing to any person or entity any confidential information other than for or on behalf and benefit of this agreement and in furtherance of the terms of this agreement is strictly prohibited.

10.2.3 Confidential Information. "Confidential Information" shall mean and include any and all Information regarding the premises, this transaction, this agreement, any lawsuits relating to the premises or this agreement, and any oral, written, and electronic messages between Zizi, his agents, and Michael and his agents.

## XI.    DEFAULT. In the event either partys' actions or inactions in any manner are in derogation of the terms of this agreement, that party shall be in default of this agreement. In the event of a default, the non-defaulting party must through its' attorney and within 15 days via certified mail, communicate such default to the defaulting party and demand that cure be made within 10 days'. In the event the cure cannot be accomplished within ten days, the allowable cure time cannot exceed 15 days. Within 10 days, the defaulting party shall communicate, via its' attorney and by certified mail, that the default has been satisfied.

XII.    **BREACH.** If the Defaulting party fails to send a certified letter indicating that default has been cured within 10 days, the defaulting party shall be in breach of this agreement. In the event of breach, the parties understand and agree that irreparable injury would be caused to the parties by failure to timely comply with the terms of this Agreement; that in the event of any breach of any of the provisions in this Agreement, the party or parties who are aggrieved thereby agree that the appropriate and fair remedy shall be to have the right to specific performance and/or an injunction, as well as monetary damages and any other appropriate relief in law or in equity which may be granted by any court in the United States of America; and that all such rights and remedies shall be cumulative and exclusive.

XIII.    **FORFEITURE.** In the event of breach of any of the provisions in this Agreement, and in addition to the relief available pursuant to paragraph 13, the breaching party agrees and understands that it shall immediately forfeit 25% of its' stake in Green Group until a judicial determination is made that the breaching party did not commit a breach. Signed contemporaneously with this agreement, both parties shall also sign a resolution transferring 25% of their stake in Green Group to the other, thereby this interest being suspended while in escrow. Zizis' resolution document shall be held in Zizi's attorneys' escrow account and shall be immediately transferred thereto upon a judicial determination that the he is in fact in breach. Michaels' resolution document shall be held in Michaels' attorneys' escrow account and shall be immediately transferred thereto upon a judicial determination that the he is in fact in breach.   In the event there is a judicial determination that the breaching party did breach this agreement for any reason, the breaching party shall forfeit 25% of its' stake in Green Group permanently.

XIV.    **ATTORNEY FEES.** The breaching party shall pay the non-breaching party's reasonable attorneys' fees.


XV.    **MISCELLANEOUS**

        12.1    Any and all notices or other communications which may be sent to any Member shall be sent to the address noted in Schedule A, unless the Company is notified in writing with regard to a change of address.   Notices or other communications shall be deemed to have been given only when deposited with the United States Postal Service by registered or certified mail, return receipt requested, addressed as set forth above.
        12.2    This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York.
        12.3    This Agreement may be executed in multiple parts, each of which shall be deemed an original and all of which together shall constitute one agreement, by each of the parties hereto on the dates indicated in the acknowledgment of said parties, notwithstanding that all of the parties are not signatories to the same part or that signature pages from different parts are combined.   The signature of any party to any part shall be deemed to be a signature to and may be appended to any

11

other part.

12.4    Words of gender used in this Agreement shall be interpreted to include the other gender, and words in the singular number shall be interpreted to include the plural (and vice-versa), when the sense so requires.   The captions to each Article are inserted only as a matter of convenience and for reference purposes and in no way define, limit or describe the scope or intent of this Agreement, nor in any way affect it.

12.5    This Agreement contains the entire understanding between the parties and supersedes any prior understandings and agreements between them concerning the within subject matter.   There are no representations, agreements, arrangements or understandings, oral or written, between the parties hereto relating to the subject matter of this Agreement which are not described herein.

12.6    This Agreement is intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations of the jurisdictions in which the Company does business.   If any provision of this Agreement or its application to any person or circumstance shall, for any reason and to any extent, be found to be invalid or unenforceable, the remainder of this Agreement or the application of such provision to other persons or circumstances shall not be affected thereby, but rather shall be enforced to the greatest extent permitted by law.

12.7    The word "person", as used in this Agreement, shall include a corporation, firm, partnership or other form of association.   "Bankruptcy", as used in this Agreement, shall be deemed to occur when a Member files a petition in bankruptcy or voluntarily takes advantage of any bankruptcy or insolvency laws, or is adjudicated a bankrupt, or when a petition or answer is filed proposing the adjudication of a Member as a bankrupt and such Member either consents to the filing or such complaint or answer is not discharged or denied prior to the expiration of sixty (60) days following the date of filing.

12.8    This Agreement, and all the terms and provisions hereof, shall be binding upon and shall inure to the benefit of all Members and their respective legal representatives, heirs, permitted successors and permitted assigns.

**IN WITNESS WHEREOF**, the Members have entered into this Agreement and have hereunto set their hands to multiple copies hereof, as of the effective date first written above.

**MEMBERS:**

Michael Kandhorov

Charles Zizi

**EXHIBIT A**

12

| MANAGER | EQUITY INTEREST |
|---|---|
| 1. Michael Kandhorov | 60% |

| MEMBER | EQUITY INTEREST |
|---|---|
| 2. Charles Zizi | 40% |

EXHIBIT 2

# AGREEMENT BETWEEN CHARLES ZIZI AND MICHAEL KANDHOROV

THIS AGREEMENT is entered into by Charles Zizi ("Zizi"), RCM Group ("RCM") and Michael Kandhorov ("Michael").

## PREAMBLE

On or about November 2015, Zizi and Michael were acquainted with one another. Zizi had represented to Michael that he desires to sell and convey his properties to him, namely 220 and 850 Greene Avenue, Brooklyn New York ("the premises"). He had also represented to Michael that he had entered into previous understandings with another for the sale and conveyance of Zizi's premises and as a consequence, these premises have a cloud on their respective titles. Lastly, Zizi had represented to Michael that these clouds on title are unwarranted.

Through their respective attorneys, and after extensive negotiations and considerations as to the circumstances regarding the premises and as to the terms of this agreement, Zizi and Michael desire to enter into this agreement for (1) the purpose of clearing and quieting title to the premises, (2) to then enter into a mutually beneficial partnership for the improvement and/or repair of the premises, and (3) to then sell the premises for a possible profit and disburse the proceeds amongst their respective interests.

## PARTIES

Charles H. Zizi ("Zizi") is a natural person residing at 10260 SW 16th Ct., Pembroke Pines, Fl 33025.

RCM Group, Inc. ("RCM") is a New York Corporation with a Department Of State Service of Process address at 11 East 1st Street Ste 424 New York, NY, 10003. Charles H. Zizi is the sole shareholder and President of RCM.
Zizi represents that RCM is in full compliance of all Federal, State, City and Local laws and regulations applicable to it and that it has no debt other than the mortgage on 850 Green Avenue, Brooklyn, NY, which is currently in default and the subject of a mortgage foreclosure proceeding.

Michael Kandhorov ("Kandhorov") is a natural person with an office address at 1202 Halsey Street Brooklyn, New York 11207. Kandhorov is the sole member and Manager of Green Group 11 LLC ("Green Group"), a New York limited liability company with a federal tax identification number of 81-0727295. Green Group has a New York Department Of State Service of Process address at 1202 Halsey Street Brooklyn, New York 11207. Kandhorov represents that Green Group is in full compliance of all Federal, State, City and Local laws and regulations applicable to it and that it has no debt.

1

## AGREEMENT BETWEEN CHARLES ZIZI AND MICHAEL KANDHOROV

**ZIZI, RCM, AND MICHAEL AGREE AS FOLLOWS:**

1. **CONSIDERATION.** In consideration of Zizis' and RCMS' cooperation, assistance, and aid in quieting and clearing title to the premises, Michael shall advance all costs and disbursements associated with any action required in furtherance of quieting and clearing title to the premises, including but not limited to advancing the costs and disbursements for the following cases:

   a. RCM Group Inc. v. 10821 Holdings LLC, index number 13345/2014

   b. Zizi v. 10821 Holdings LLC, index number 14062/2014.

2. **ZIZI'S REPRESENTATIONS AND OBLIGATIONS.** Zizi understands that Kandhorov has specifically relied upon the truth and accuracy of Zizi's warranties and representations in this Agreement as a special inducement in the making and execution of this Agreement, such that without said warranties and representations having been made by Zizi and Kandhorov's reliance thereon, Zizi would not have made and/or executed this Agreement. Zizi represents and warrants the following:

   a. That 10821 Holdings LLC defrauded him into executing a deed to the Properties and that he did not received the benefit of the bargain that he made with it, as Zizi has represented to the Court in the Litigation.
   b. Zizi represents that in the course of the Litigation he executed a settlement agreement that was meant to dispose of the Litigation, but that 10821 Holdings LLC breached that agreement.
   c. Zizi represents that he received a total of not more than $100,000 in the course of two years from 10821 Holdings LLC after executing that settlement agreement. Zizi understands and agrees that any money that may be repaid to 10821 Holdings LLC in connection with the Litigation shall be an expense borne by Michael, on behalf of Green Group. Zizi agrees not to accept any further payments from 10821 Holdings LLC.
   d. Zizi represents that he is the sole shareholder and President of RCM and that he has not encumbered the company or the Properties in any way other than what is set forth herein.
   e. Zizi understands and agrees that any money that may be required to clear title to the Premises after a successful conclusion to the Litigation shall be borne by Michael.

3. **ZIZI'S RIGHTS AND RESPONSIBILITIES.** Throughout the effectiveness of this Agreement, Zizi shall have the following rights and responsibilities:

## AGREEMENT BETWEEN CHARLES ZIZI AND MICHAEL KANDHOROV

   a. Receive regularly accurate and complete information and documentation regarding the timing and amounts of expenditures of the funds Kandhorov and Green Group provide hereunder, and

   b. Receive regular progress updates, and

   c. Review all required permits, filings, plans, inspections, approvals and other documentation required for construction, and

   d. Inspect the Premises on a daily basis, and

   e. Assume legal physical control of the Premises in the event of Kandhorov's default hereunder, and

   f. Request and receive from Kandhorov and Green Group any reasonable assistance in connection with his participation in this Agreement.

   g. Zizi shall cooperate in all aspects of the Litigation and be truthful in all representations to counsel and before the Court.

   h. Zizi shall cooperate and participate in negotiations with any alleged lien holders so as to reduce the amount of money that must be paid to settle those alleged liens.

   i. he shall use his best efforts to diligently and fully cooperate with Green Group, Michael and personally perform such activities and services as are necessary to complete the premises and resell the Premises for maximum profit, and he shall not do, participate in, perform or authorize to be performed in their name, any action or act, undertake any obligation the result of which would be to prevent, encumber, limit or prohibit the performance or fulfillment of any obligations of Green Group, toward Michael or under this Agreement.

**4. RCM REPRESENTATIONS, OBLIGATIONS, RIGHTS AND RESPONSIBILITIES.** RCM understands and agrees that it shall undertake and make the same representations, obligations, rights, and responsibilities as its' principal Zizi.

**5. KANDHOROV'S REPRESENTATIONS AND OBLIGATIONS.** Kandhorov represents and warrants the following, which are an inducement to Zizi and RCM entering into this agreement:

   a. That upon taking title to the Premises, and in connection with the premises, he shall use his best efforts to diligently and fully direct Green Group and personally perform such activities and services as are necessary to complete the premises and resell the Premises for maximum profit, and he shall not do, participate in, perform or authorize to be performed in their name, any action or act, undertake any obligation the result of which would be to prevent, encumber, limit or prohibit the performance or fulfillment of any obligations of Green Group, toward Zizi, RCM or under this Agreement.

3

      b. He shall cover from his own funds any obligations of Green Group under this Agreement, specifically those relating to the negotiation settlement and extinguishing of any alleged liens imposed on the Premises, all of which shall be an expense of Green Group and the premises to be repaid upon the sale of the Premises. Kandhorov will not be obligated to settle any such lien or encumbrance until and unless title to the Premises has transferred to Green Group, but do so in his discretion.

**6. Rights, Obligations, and Responsibilities Enforced.** The parties rights, obligations, and responsibilities under this agreement shall be construed liberally so to allow the either party to enforce the provisions of such agreement efficiently and in furtherance of the purpose of this agreement.

**7. FORMATION OF NEW ENTITY.** The parties acknowledge that a new limited liability company has been formed. The name of the company is Green Group 11 LLC ("Green Group"). The costs associated with formation of the company were be borne by Michael.

      a. The members of the new company shall be Zizi and Michael, Zizi holding 40% and Michael holding 60% respectively. Michael shall be the sole managing member of the company. In consideration for Michaels' 60%, Michael shall deposit into Green Group $102,500 for the sole purpose of purchasing the premises. In consideration of Zizi's 40%, Zizi agrees to provide cooperation, assistance and aid in the improvement and/or repair of the premises.

**8. CLEARING TITLE/SALE OF PREMISES.** Upon the clearing and quieting of title to the premises, title to the premises shall immediately vest with Green Group in consideration for $102,500 collectively, $51,250 as consideration for each property. A general warranty deed from Zizi to Green Group for 220 Greene Avenue shall be signed together with this agreement and shall be held by the attorney for Zizi. A general warranty deed from RCM to Green Group LLC for 850 Greene Avenue shall be signed together with this agreement and shall be held by the attorney for RCM. Zizi, within 7 days of title vesting with Green Group, shall send both the general warranty deeds via express one-day mail to the Attorney for Michael.

      a. Upon the rights to the premises vesting with Green Group, Green Group shall begin improving and/or renovating the premises.

      b. After the premises' improvement and/or renovation are complete, Green Group shall, within 15 days offer the premises for sale at its' fair market value. Zizi, RCM and Michael shall cooperate as may be required to bring about such a sale. In the event Michael and Zizi cannot obtain the fair market value for the premises, Zizi,

4

AGREEMENT BETWEEN CHARLES ZIZI AND MICHAEL KANDHOROV

RCM and Michael shall use their best efforts to obtain rental income from the premises, of which shall be divided amongst them pursuant to their respective interests in Green Group.

c.  Upon the sale of the premises, the net proceeds thereof shall be distributed as to Zizi's and Michael's respective interests in Green Group, with Michaels' costs and disbursements as per this agreement, to be reimbursed to him first before such net proceeds are disbursed.

d.  Upon the disbursement of the net proceeds, the parties agree that the company shall be dissolved and this agreement shall be deemed fully complied thereto.

**9. ADVANCE PAYMENT ACKNOWLEDGMENT.** Zizi acknowledges that Michael has advanced monies to Zizi for the purchase of the premises in the following amounts:

a.  $50,000 via several business checks disbursed by Michael to Zizi between November and December 2015. $50,000, of which $25,000 is for 220 Greene Avenue and $25,0000 is for 850 Greene Avenue.

b.  $50,000 via a business check disbursed by Michael to Zizi on the signing of this agreement. $50,000, of which $25,000 is for 220 Greene Avenue and $25,000 is for 850 Greene Avenue.

e.  At the time the title vests with Green Group and after receipt of the deed pursuant to paragraph 8 of this agreement, Michael, on behalf of Green Group, shall disburse the remaining $2,500 and shall send the same to the Attorney for Zizi. $2,500, of which $1,250 is for 220 Greene Avenue and $1,250 is for 850 Greene Avenue.

f.  These advances are non-refundable.

**10. NON-DISCLOSURE.** Both parties agree that during the life of this agreement and through and including the conveyance of the premises the

a.  use of any confidential information for personal pecuniary gain of any sort directly or indirectly other than for or on behalf and benefit of this agreement and in furtherance of the terms of this agreement is strictly prohibited and

b.  disclosing to any person or entity any confidential information other than for or on behalf and benefit of this agreement and in furtherance of the terms of this agreement is strictly prohibited.

5

AGREEMENT BETWEEN CHARLES ZIZI AND MICHAEL KANDHOROV

**11. CONFIDENTIAL INFORMATION.** "Confidential Information" shall mean and include any and all Information regarding the premises, this transaction, this agreement, any lawsuits relating to the premises or this agreement, and any oral, written, and electronic messages between Zizi, his agents, and Michael and his agents.

**12. DEFAULT.** In the event either partys actions or inactions in any manner are in derogation of the terms of this agreement, that party shall be in default of this agreement. In the event of a default, the non-defaulting party must through its' attorney and within 15 days via certified mail, communicate such default to the defaulting party and demand that cure be made within 10 days'. In the event the cure cannot be accomplished within ten days, the allowable cure time cannot exceed 15 days. Within 10 days, the defaulting party shall communicate, via its' attorney and by certified mail, that the default has been satisfied.

**13. BREACH.** If the Defaulting party fails to send a certified letter indicating that default has been cured within 10 days, the defaulting party shall be in breach of this agreement. In the event of breach, the parties understand and agree that irreparable injury would be caused to the parties by failure to timely comply with the terms of this Agreement; that in the event of any breach of any of the provisions in this Agreement, the party or parties who are aggrieved thereby agree that the appropriate and fair remedy shall be to have the right to specific performance and/or an injunction, as well as monetary damages and any other appropriate relief in law or in equity which may be granted by any court in the United States of America; and that all such rights and remedies shall be cumulative and exclusive.

**14. FORFEITURE.** In the event of breach of any of the provisions in this Agreement, and in addition to the relief available pursuant to paragraph 13, the breaching party agrees and understands that it shall immediately forfeit 25% of its' stake in Green Group until a judicial determination is made that the breaching party did not commit a breach. Signed contemporaneously with this agreement, both parties shall also sign a resolution transferring 25% of their stake in Green Group to the other, thereby this interest being suspended while in escrow. Zizis' resolution document shall be held in Zizi's attorneys' escrow account and shall be immediately transferred thereto upon a judicial determination that the he is in fact in breach. Michaels' resolution document shall be held in Michaels' attorneys' escrow account and shall be immediately transferred thereto upon a judicial determination that the he is in fact in breach.  In the event there is a judicial determination that the breaching party did breach this agreement for any reason, the breaching party shall forfeit 25% of its' stake in Green Group permanently.

**15. ATTORNEY FEES.** The breaching party shall pay the non-breaching party's reasonable attorneys' fees.

6

AGREEMENT BETWEEN CHARLES ZIZI AND MICHAEL KANDHOROV

**16. ENTIRE AGREEMENT.** This Agreement contains the entire understanding between the parties and supersedes any prior understandings and agreements between them. There are no representations, agreements, arrangements or understandings, oral or written, between the parties hereto relating to this Agreement, which are not described herein

**17. GOVERNING LAW.** This Agreement shall be governed by the laws of the State of New York.

**18. NO ASSIGNMENT.** Neither party can assign any rights hereunder to another.

**19. ENFORCEABILITY.** If any provision of this Agreement or its application to any person or circumstance shall, for any reason and to any extent, is found to be invalid or unenforceable, the remainder of this Agreement or the application of such provision to other persons or circumstances shall not be affected, but rather shall be enforced to the greatest extent permitted by law.

**20. COUNTERPARTS.** This Agreement may be executed in one or more counterparts by the Parties hereto. All counterparts shall be construed together and shall constitute one agreement

**21. VOLUNTARILY AND KNOWINGLY ENTER INTO THIS AGREEMENT.** The Parties warrant and represent that each has read this Agreement carefully, understand all the terms and conditions set forth herein, and have voluntarily agreed to all the terms and conditions of their own free will without any coercion, duress and undue influence. The Parties further represent and warrant to each other that they: (i) have had the opportunity to review this Agreement with an attorney of their choosing as they desired and fully understand each and every provision of this Agreement and (ii) therefore voluntarily, knowingly and intentionally executed and delivered this Agreement intending to be fully bound hereby, without any threat, harassment, other improper inducement or other improper conduct. (c) It is specifically understood and agreed by the Parties that this Agreement is the result of extensive negotiations between the Parties and both Parties shall be deemed to have drawn these documents in order to avoid any negative inference by any court as against the preparer of the document.

AGREEMENT BETWEEN CHARLES ZIZI AND MICHAEL KANDHOROV

22. **HEADINGS.** Headings in this Agreement are included herein for the convenience of reference only and shall not constitute a part of this Agreement for any purpose.

**NOW WHEREFORE,** the Parties have caused their signatures to be placed on this Agreement by their duly authorized representatives to signify their assent to be bound and perform their respective obligations hereunder.

Dated: _12/24/15_

Charles Zizi

Sworn to me before this _14_ day of _December_ 2015

NOTARY

ILEVU YAKUBOV
Notary Public, State of New York
02YA6327144
Qualified in Queens County
Commission Expires June 29, 20__

Dated: _12/24/15_

Charles Zizi
Authorized Signatory
RGM Group

Sworn to me before this _14_ day of _December_ 2015

NOTARY

Dated: _12/24/15_

Michael Kandhorov

Sworn to me before this _14_ day of _December_ 2015

NOTARY

ILEVU YAKUBOV
Notary Public, State of New York
02YA6327144
Qualified in Queens County
Commission Expires June 29, 20__

ILEVU YAKUBOV
Notary Public, State of New York
02YA6327144
Qualified in Queens County
Commission Expires June 29, 20__

_Marie P Pereira_
Attorney for Charles Zizi

_1224 Flatbush Avenue_
_Brooklyn, New York 11226_

Leo Yakubov, Esq.
The Yakubov Law Firm
Attorney for Michael Kandhorov
1202 Halsey Street, Ste. 101
Brooklyn, New York 11207
(718) 772-8704
Leo@YakubovLaw.com

EXHIBIT 3

## CONSENT TO ACTION

The undersigned, who are all of the managers and members of Green Group 11 LLC, a limited liability company created under the laws of the state of New York (the "Company"), consent to the adoption of the following resolution without a meeting as permitted under the terms of the Company's operating agreement:

**WHEREAS,** Michael Kandhorov ("Michael"), a managing member of the aforementioned Company herein failed to cure his default, as it was communicated to him via certified mail through Zizis' attorney on _____ pursuant to the agreement agreed thereto between Michaeland Charles on December 24, 2015 ("Agreement");

**WHEREAS,** Michael is now in breach and pursuant to the agreement agrees that the appropriate and fair remedy to Zizi and Green Group shall be to have the right to specific performance and/or an injunction, as well as monetary damages and any other appropriate relief in law or in equity, which may be granted to Zizi and Green Group;

**WHEREAS,** Michael is now in breach and pursuant to the agreement he shall immediately forfeit 25% of its' stake in Green Group until a judicial determination is made that he did not commit a breach of the Green Group Operating Agreement ("Operating Agreement") and the Agreement.

**WHEREAS,** Michael is now in breach and has agreed to sign a resolution transferring 25% of its' stake in Green Group to Zizi, thereby this interest being suspended while in escrow.

**RESOLVED** that Michael now in breach agrees and does append his signature to this resolution transferring 25% of its' stake in Green Group to Zizi, and that such is and shall be suspended and placed into escrow of Michael's attorney, until such time that a judicial determination is made that he did not commit a breach.

**FURTHER RESOLVED** that any portion of Michael's profits equal to the 25%, of which he may be entitled to pending a judicial determination shall also be placed into escrow of Michaels' attorney.

**FURTHER RESOLVED** that if a judicial determination is made, and Michael is in breach of the Operating Agreement or the Agreement, he unequivocally and without contest hereby forfeits his 25% in Green Group permanently and the new interests hereinafter are Zizi- 65% and Michael- 35%.

Dated: December 29, 2015

Michael Kandhorov                                    Charles Zizi

EXHIBIT 4

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

**THIS INDENTURE,** made the 28th day of December, Two Thousand and Fifteen

**BETWEEN**

      **CHARLES ZIZI,** residing at 220 Greene Avenue, Brooklyn, New York 11238

party of the first part, and

      **GREEN GROUP 11 LLC,** 1202 Halsey Street, Brooklyn, NY 11207

party of the second part,

**WITNESSETH,** that the party of the first part, in consideration of  ($10.) Ten dollars paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, designated on the tax map of the City for said Borough as said Tax Map was on April 27, 1976 and as located at 220 Greene Avenue Brooklyn, New York bounded and described as follows:

**BEGINNING** at a point on the Southerly side of Greene Avenue, distant 20 feet Easterly from the corner formed by the intersection of the Southerly side of Greene Avenue and the Easterly side of Grand Avenue;

**RUNNING THENCE** Easterly, along the Southerly side of Greene Avenue, 20 feet;

**THENCE** Southerly, parallel to the Easterly Side of Grand Avenue, 50 feet;

**THENCE** Westerly, parallel to the Southerly Side of Grand Avenue, 20 feet;

**THENCE** Northerly, parallel to the Easterly side of Grand Avenue, 50 feet to Southerly side of Greene Avenue, the point or place of beginning.

**THE PREMISES** being conveyed is the same as the premises described in the Deed to the Grantor recorded in CRFN#2006000616134.

**SAID PREMISES** being known as:    220 GREENE AVENUE, BROOKLYN, NEW YORK 11238
                                  Block: 1966    Lot: 107

**TOGETHER** with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; **TOGETHER** with the appurtenances and all the estate and rights of the party of the first part in and to said premises; **TO HAVE AND TO HOLD** the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

**AND** the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

**AND** the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF,** the party of the first part has duly executed this deed the day and year first above

<u>TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE IN NEW YORK STATE</u>

State of New York, County of                              ss.

On the        day of                    in the year
before me, the undersigned, personally appeared
    Charles Zizi
personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which
the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

MARIE PAUL PEREIRA
NOTARY PUBLIC
NASSAU COUNTY, STATE OF NEW YORK
Commission Expires April 19, 20__
REGISTRATION No. 02PE6168533

State of New York, County of                              ss:

On the        day of                    in the year
before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which
the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

# BARGAIN AND SALE DEED
WITH COVENANT AGAINST GRANTOR'S ACTS

Title No.
    CHARLES ZIZI
        TO

GREEN GROUP 11 LLC

BLOCK  1966
LOT  107
COUNTY: KINGS
STREET ADDRESS:  850 Greene Avenue,
BROOKLYN, NY 11238

Recorded at Request of

Charles Zizi

RETURN BY MAIL TO:

Green Group 11 LLC
1202 Halsey Street, Ste. 101
Brooklyn, New York 11207

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

THIS INDENTURE, made the 28th day of December, Two Thousand and Fifteen

BETWEEN

   RCM GROUP INC., with offices at 220 Greene Avenue, Brooklyn, New York 11238

party of the first part, and

   GREEN GROUP 11 LLC, with offices at 1202 Halsey Street, Brooklyn, NY 11207

party of the second part,

WITNESSETH, that the party of the first part, in consideration of  ($10.) Ten dollars paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, and as located at 850 Greene Avenue Brooklyn, New York bounded and described as follows:

BEGINNING at a point on the Southerly side of Greene Avenue, distant 120 feet Westerly from the corner formed by the intersection of the Southerly side of Greene Avenue and the Westerly side of Stuyvesant Avenue;

RUNNING THENCE Southerly, parallel with Stuyvesant Avenue and part of the distance through a party wall, 100 feet;

THENCE Westerly, parallel with Greene Avenue, 20 feet;

THENCE Northerly, parallel with Stuyvesant Avenue and part of the distance through a party wall 100 feet to the southerly side of Greene Avenue 20 feet to the point of or place of Beginning.

THENCE Easterly, along the southerly side of Greene Avenue 20 feet to the point or place of BEGINNING.

THE PREMISES being conveyed  s the same as the premises described in the Deed to the Grantor recorded in CRFN# 2007000054869.

SAID PREMISES being known as:      850 GREENE AVENUE, BROOKLYN, NEW YORK 11238
                                   Block: 1620     Lot: 40

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above

## TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE IN NEW YORK STATE

State of New York, County of                    ss:

On the        day of                in the year
before me, the undersigned, personally appeared
    Charles Zizi
personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which
the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

MARIE-PAUL PRIGORA
NOTARY PUBLIC
NASSAU COUNTY, STATE OF NEW YORK
Commission Expires April 19 20 ____
REGISTRATION No. 02PE6168883

State of New York, County of                    ss:

On the        day of                in the year
before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which
the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

## BARGAIN AND SALE DEED
WITH COVENANT AGAINST GRANTOR'S ACTS

Title No.
    CHARLES ZIZI
            TO

    GREEN GROUP 11 LLC

BLOCK  1966
LOT  107
COUNTY: KINGS
STREET ADDRESS:  220 Greene Avenue,
BROOKLYN, NY 11238

Recorded at Request of

Charles Zizi

RETURN BY MAIL TO:

Green Group 11 LLC
1202 Halsey Street, Ste. 101
Brooklyn, New York 11207

EXHIBIT 5



2016092600121001001E15BE

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 3 |
|---|---|

**Document ID:** 2016092600121001    **Document Date:** 09-01-2016    **Preparation Date:** 09-26-2016
**Document Type:** DEED
**Document Page Count:** 2

| PRESENTER: | RETURN TO: |
|---|---|
| RICHMOND RECORDING<br>135-10 LIBERTY AVENUE<br>16CAK-10290<br>RICHMOND HILL, NY 11419<br>718-323-8080<br>TOM@CITIABSTRACTTITLE.COM | RICHMOND RECORDING<br>135-10 LIBERTY AVENUE<br>16CAK-10290<br>RICHMOND HILL, NY 11419<br>718-323-8080<br>TOM@CITIABSTRACTTITLE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 1620 | 40 | Entire Lot | 850 GREENE AVENUE |

**Property Type:** DWELLING ONLY - 4 FAMILY

### CROSS REFERENCE DATA

CRFN_____ _or_ DocumentID_____ _or_ Year_____ Reel_____ Page_____ _or_ File Number

### PARTIES

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| 10821 HOLDINGS L.L.C.<br>320 ROEBLING STREET, SUITE 412<br>BROOKLYN, NY 11211 | 1412 HERKIMER REALTY CORP.<br>1202 HALSEY STREET<br>BROOKLYN, NY 11207 |

### FEES AND TAXES

| Mortgage : | | | |
|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | |
| Taxable Mortgage Amount: | $ | 0.00 | |
| Exemption: | | | |
| TAXES:   County (Basic): | $ | 0.00 | |
| City (Additional): | $ | 0.00 | |
| Spec (Additional): | $ | 0.00 | |
| TASF: | $ | 0.00 | |
| MTA: | $ | 0.00 | |
| NYCTA: | $ | 0.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 0.00 | |
| Recording Fee: | $ | 47.00 | |
| Affidavit Fee: | $ | 0.00 | |

Filing Fee:
$                          250.00
NYC Real Property Transfer Tax:
$                        1,995.00
NYS Real Estate Transfer Tax:
$                          560.00

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed        09-27-2016 10:56
City Register File No.(CRFN):
                        2016000336889

*City Register Official Signature*

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

1st     September

THIS INDENTURE, made the 24th day of August, Two Thousand and Sixteen

BETWEEN

10821 HOLDINGS L.L.C., 320 Roebling Street, Suite 412, Brooklyn, NY 11211

party of the first part, and

1412 HERKIMER REALTY CORP., 1202 Halsey Street, Brooklyn, NY 11307

party of the second part,

WITNESSETH, that the party of the first part, in consideration of (S10.) Ten dollars paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Kings, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of Greene Avenue, distant 120 feet westerly from the corner formed by the intersection of the southerly side of Greene Avenue and the westerly side of Stuyvesant Avenue;

RUNNING THENCE southerly parallel with Stuyvesant Avenue and part of the distance through a party wall, 100 feet;

THENCE westerly parallel with Greene Avenue, 20 feet;

THENCE northerly and parallel with Stuyvesant Avenue and part of the distance through a party wall, 100 feet to the southerly side of Greene Avenue;

THENCE easterly along the southerly side of Greene Avenue, 20 feet to the point or place of BEGINNING.

SAID PREMISES being known as: 860 GREENE AVENUE, BROOKLYN NEW YORK 11238

SECTION: 6          BLOCK: 1620          LOT: 40

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" when ever the sense of this Indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

10821 HOLDINGS L.L.C.
By Shabsi Pfeiffer   aka   Samuel Pfeiffer

Standard N.Y.B.T.U. Form 8007 - Bargain and Sale Deed, with Covenant against Grantor's Acts - Uniform Acknowledgment
Form 3290

## TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE IN NEW YORK STATE

State of New York, County of ~~Greene~~ king      ss.:
September

On the 5st day of ~~August~~ in the year 2016
before me, the undersigned, personally appeared

**Shabsi Pfeiffer** aka Samuel Pfeiffer

personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which
the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

SHABANA HUSSAIN
Notary Public, State of New York
No. 01HU6320572
Qualified in Queens County
Commission Expires 03/05/2019

State of New York, County of      ss.:

On the day of in the year
before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which
the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

## TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE OUTSIDE NEW YORK STATE

State (or District of Columbia, Territory, or Foreign Country) of      ss.:

On the day of in the year before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are)
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and
that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted,
executed the instrument, and that such individual made such appearance before the undersigned in the

_____ in _____
(insert the City or other political subdivision)    (and insert the State or Country or other place the acknowledgment was taken)

_____
(signature and office of individual taking acknowledgment)

**BARGAIN AND SALE DEED**
WITH COVENANT AGAINST GRANTOR'S ACTS

Title No. 16CAK-10290

10821 HOLDINGS L.L.C.
TO
1412 HERKIMER REALTY CORP.

STANDARD FORM OF NEW YORK BOARD OF TITLE UNDERWRITERS
Distributed by
Citi Abstract Inc.

| | |
|---|---|
| SECTION | 6 |
| BLOCK | 1620 |
| LOT | 40 |
| COUNTY | KINGS |
| ADDRESS | 850 GREENE AVENUE, BROOKLYN, NY 11238 |

Recorded at Request of
Chicago Title Insurance Company

RETURN BY MAIL TO:

rc

<table>
<tr><td rowspan="2"><strong>NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER</strong></td><td></td></tr>
<tr><td>2016092600121001001SDB3F</td></tr>
</table>

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
| --- | --- |

**Document ID: 2016092600121001**    Document Date: 09-01-2016    Preparation Date: 09-26-2016
Document Type: DEED

**ASSOCIATED TAX FORM ID:**   2016082400447

**SUPPORTING DOCUMENTS SUBMITTED:**

| | Page Count |
| --- | --- |
| DEP CUSTOMER REGISTRATION FORM FOR WATER AND SEWER BILLING | 1 |
| RP - 5217 REAL PROPERTY TRANSFER REPORT | 1 |
| SMOKE DETECTOR AFFIDAVIT | 1 |

FOR CITY USE ONLY

| | | |
|---|---|---|
| C1. County Code | | |
| C2. Date Deed Recorded | Month Day Year | |
| C3. Book OR | | C4. Page |
| C5. CRFN | | |

**REAL PROPERTY TRANSFER REPORT**

STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES

# RP - 5217NYC

## PROPERTY INFORMATION

**1. Property Location**  850 | GREENE AVENUE | BROOKLYN | 11221
STREET NUMBER    STREET NAME    BOROUGH    ZIP CODE

**2. Buyer Name**  1412 HERKIMER REALTY CORP.
LAST NAME / COMPANY    FIRST NAME
LAST NAME / COMPANY    FIRST NAME

**3. Tax Billing Address**  Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
LAST NAME / COMPANY    FIRST NAME
STREET NUMBER AND STREET NAME    CITY OR TOWN    STATE    ZIP CODE

**4. Indicate the number of Assessment Roll parcels transferred on the deed**  1  # of Parcels  OR  ☐ Part of a Parcel

4A. Planning Board Approval - N/A for NYC
4B. Agricultural District Notice - N/A for NYC

**5. Deed Property Size**  FRONT FEET  X  DEPTH  OR  ACRES

Check the boxes below as they apply:
6. Ownership Type is Condominium  ☐
7. New Construction on Vacant Land  ☐

**8. Seller Name**  10821 HOLDINGS L.L.C.
LAST NAME / COMPANY    FIRST NAME
LAST NAME / COMPANY    FIRST NAME

**9. Check the box below which most accurately describes the use of the property at the time of sale:**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| A ☐ | One Family Residential | C ☐ | Residential Vacant Land | E ☐ | Commercial | G ☐ | Entertainment / Amusement | I ☐ | Industrial |
| B ☐ | 2 or 3 Family Residential | D ☐ | Non-Residential Vacant Land | F ☑ | Apartment | H ☐ | Community Service | J ☐ | Public Service |

## SALE INFORMATION

**10. Sale Contract Date**  8 / 24 / 2016
Month Day Year

**11. Date of Sale / Transfer**  8 / 24 / 2016
Month Day Year

**12. Full Sale Price** $  1 4 3 0 0 0

( Full Sale Price is the total amount paid for the property including personal property.
This payment may be in the form of cash, other property or goods, or the assumption of
mortgages or other obligations.)  *Please round to the nearest whole dollar amount.*

**13. Indicate the value of personal property included in the sale** $

**14. Check one or more of these conditions as applicable to transfer:**

| | |
|---|---|
| A ☐ | Sale Between Relatives or Former Relatives |
| B ☐ | Sale Between Related Companies or Partners in Business |
| C ☐ | One of the Buyers is also a Seller |
| D ☐ | Buyer or Seller is Government Agency or Lending Institution |
| E ☐ | Deed Type not Warranty or Bargain and Sale (Specify Below) |
| F ☐ | Sale of Fractional or Less than Fee Interest ( Specify Below ) |
| G ☐ | Significant Change in Property Between Taxable Status and Sale Dates |
| H ☐ | Sale of Business is Included in Sale Price |
| I ☐ | Other Unusual Factors Affecting Sale Price ( Specify Below ) |
| J ☑ | None |

## ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill

**15. Building Class**  C 3

**16. Total Assessed Value** (of all parcels in transfer)  3 2 4 7 6

**17. Borough, Block and Lot / Roll Identifier(s)** ( If more than three, attach sheet with additional identifier(s) )

BROOKLYN 1620 40

| CERTIFICATION | I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments. |
|---|---|

| BUYER | | BUYER'S ATTORNEY | |
|---|---|---|---|

BUYER SIGNATURE | DATE 09-01-16 | LAST NAME | FIRST NAME

4202 HALSEY STREET

STREET NUMBER | STREET NAME (AFTER SALE) | AREA CODE | TELEPHONE NUMBER

| | SELLER | |

BROOKLYN | NY | 11207 | SELLER SIGNATURE | DATE 09-01-16

CITY OR TOWN | STATE | ZIP CODE

2016082400447201

# AFFIDAVIT OF COMPLIANCE
## WITH SMOKE DETECTOR REQUIREMENT
## FOR ONE- AND TWO-FAMILY DWELLINGS

State of New York    )
                     ) SS.:
County of Kings      )

The undersigned, being duly sworn, depose and say under penalty of perjury that they are the grantor and grantee of the real property or of the cooperative shares in a cooperative corporation owning real property located at

850 GREENE AVENUE
Street Address                                           Unit/Apt.

BROOKLYN          New York,    1620        40      (the "Premises");
Borough                        Block       Lot

That the Premises is a one or two family dwelling, or a cooperative apartment or condominium unit in a one- or two-family dwelling, and that installed in the Premises is an approved and operational smoke detecting device in compliance with the provisions of Article 6 of Subchapter 17 of Chapter 1 of Title 27 of the Administrative Code of the City of New York concerning smoke detecting devices;

That they make affidavit in compliance with New York City Administrative Code Section 11-2105 (g). (The signatures of at least one grantor and one grantee are required, and must be notarized).

Name of Grantor (Type or Print)              Name of Grantee (Type or Print)

Signature of Grantor                         Signature of Grantee

Sworn to before me                    Sworn to before me
this 1ST date of September 20 16      this 1ST date of September 20 16

SHABANA HUSSAIN                       SHABANA HUSSAIN
Notary Public, State of New York      Notary Public, State of New York
No. 01HU6320572                       No. 01HU6320572
Qualified in Queens County            Qualified in Queens County
Commission Expires 03/17/2019         Commission Expires 03/17/2019

These statements are made with the knowledge that a willfully false representation is unlawful and is punishable as a crime of perjury under Article 210 of the Penal Law.

NEW YORK CITY REAL PROPERTY TRANSFER TAX RETURNS FILED ON OR AFTER FEBRUARY 6th, 1990, WITH RESPECT TO THE CONVEYANCE OF A ONE- OR TWO-FAMILY DWELLING, OR A COOPERATIVE APARTMENT OR A CONDOMINIUM UNIT IN A ONE- OR TWO-FAMILY DWELLING, WILL NOT BE ACCEPTED FOR FILING UNLESS ACCOMPANIED BY THIS AFFIDAVIT.

1

2016082400447101



The City of New York
Department of Environmental Protection
Bureau of Customer Services
59-17 Junction Boulevard
Flushing, NY  11373-5108

## Customer Registration Form for Water and Sewer Billing

### Property and Owner Information:

(1)  Property receiving service: BOROUGH: BROOKLYN          BLOCK: 1620          LOT: 40

(2)  Property Address: 850  GREENE AVENUE, BROOKLYN, NY 11221

(3)  Owner's Name:     1412 HERKIMER REALTY CORP.

Additional Name:

### Affirmation:

[✓]   Your water & sewer bills will be sent to the property address shown above.

### Customer Billing Information:

Please Note:

A.  Water and sewer charges are the legal responsibility of the owner of a property receiving water and/or sewer service. The owner's responsibility to pay such charges is not affected by any lease, license or other arrangement, or any assignment of responsibility for payment of such charges. Water and sewer charges constitute a lien on the property until paid. In addition to legal action against the owner, a failure to pay such charges when due may result in foreclosure of the lien by the City of New York, the property being placed in a lien sale by the City or Service Termination.

B.  Original bills for water and/or sewer service will be mailed to the owner, at the property address or to an alternate mailing address.  DEP will provide a duplicate copy of bills to one other party (such as a managing agent), however, any failure or delay by DEP in providing duplicate copies of bills shall in no way relieve the owner from his/her liability to pay all outstanding water and sewer charges. Contact DEP at (718) 595-7000 during business hours or visit www.nyc.gov/dep to provide us with the other party's information.

### Owner's Approval:

The undersigned certifies that he/she/it is the owner of the property receiving service referenced above; that he/she/it has read and understands Paragraphs A & B under the section captioned "Customer Billing Information"; and that the information supplied by the undersigned on this form is true and complete to the best of his/her/its knowledge.

Print Name of Owner:

Signature: _____ Date (mm/dd/yyyy)

Name and Title of Person Signing for Owner, if applicable

BCS-7CRF-ACRIS  REV. 8/08

2

2016082400447101

EXHIBIT 6



*By Certified Mail*

July 7, 2017

Michael Kandhorov
1202 Halsey St.
Brooklyn, NY 11207

              Re: <u>*Notice of Default*</u>

Dear Mr. Kandhorov,

        I write on behalf of my client, Charles Zizi.  Pursuant to Section 11 of the Operating Agreement governing Green Group 11, LLC, dated January 19, 2016, Mr. Zizi hereby notifies you that you are currently committing the following events of default the Operating Agreement:

        1.  <u>Non-distribution of Rent</u>:  Under Section 5 of the Operating Agreement, 40% of all net profits received by Green Group 11, LLC are to be distributed to Mr. Zizi.  However, despite the fact that Mr. Zizi's share of the rents collected from the 220 Greene Avenue property since October 2016 exceeds $23,400, he has received nothing.   This is a *prima facie* breach of the agreement.  In addition, we note that the purported expenses that you claim have been incurred by the building are largely unsubstantiated and consist primarily of (a) construction payments made for no clear purpose and purportedly made for apartments that were occupied at the time, (b) an purported purchase of over $6,100 in appliances from P.C. Richards for which there is no documentary evidence, (c) a supposed payment of $5,200 for a tenant to move out in November that is not supported by any documentary evidence and is inconsistent with the fact that the tenant did not move out until March, and (d) over $3,700 in payments to Home Depot, with no showing that the purchases were for the benefit of 220 Greene.[1]  In addition, whatever little credibility these allegations may have are completely undermined by your prior inconsistent statements, wherein you stated that the rent money was used for the repayment of various loans.

        2.  <u>850 Greene Avenue</u>: Pursuant to Section 1.3 of the Operating Agreement, Green Group 11, LLC was formed for the express purpose of purchasing 220 and 850 Greene Avenue.  Instead, you have diverted 850 Greene Avenue to another entity you control (1412 Herkimer Realty Corp.).[2]  By acquiring 850 Greene Avenue for yourself, despite the indisputably tangible expectancy that Greene

---

[1] It should be noted that the failure to keep accurate records documenting these transactions, should they have occurred, would itself be a breach of Section 2.4 of the Operating Agreement.

[2] Even if, *arguendo*, Mr. Zizi was aware of and agreed to the switch, any attempt to convey an ownership interest to him by oral agreement is a nullity under the statute of frauds, and any attempt to get him to enter into such an agreement is *prima facie* fraudulent inducement.

The Law Office of Theodore Geiger, PLLC | 85 Broad Street, 18th Floor | New York, NY 10004

212-804-8617 | tgeiger@TedGeigerLaw.com


The Law Office of
Theodore Geiger

Group 11, LLC had to acquire the property, you have misappropriated corporate opportunities and committed a willful breach of fiduciary duty, in violation of Section 2.5 of the Operating Agreement.

Accordingly, pursuant to Section 11 of the Operating Agreement, Mr. Zizi hereby demands that you cure the above-mentioned defaults by the close of business on July 18, 2017. In order to do so, you would need to (a) pay Mr. Zizi his full share of the rents owed on 220 Greene Avenue and (b) convey the deed for 850 Greene Avenue to Green Group 11, LLC. Failure to perform either of these steps will force Mr. Zizi to take all appropriate steps as contemplated under Section 12 of the Operating Agreement, and invoke the forfeiture provisions of Section 13 of that agreement as well.

Please do not hesitate to contact me should you have any questions or concerns.

Very truly yours,

Theodore S. Geiger, Esq.

Cc:  Leo Yakubov (by email)

EXHIBIT 7

| Vendor | Total | Date | Payment type | Expense | Tax | Sub Total |
|---|---|---|---|---|---|---|
| BK NYC Construction | $300.00 | 09/01/16 Credit | | Super | $0.00 | $300.00 |
| BK NYC Construction | $300.00 | 10/01/16 Credit | | Super | $0.00 | $300.00 |
| BK NYC Construction | $300.00 | 11/01/16 Credit | | Super | $0.00 | $300.00 |
| Tru Waves Construction | $3,990.30 | 11/23/16 Check | | Labor | $398.63 | $3,990.30 |
| Frances Weinstock (BX NYC Reimburse) | $5,200.00 | 11/28/16, Check 475 (326 Quincy) | | Move Out | $0.00 | $5,200.00 |
| BK NYC Construction | $300.00 | 12/01/16 Credit | | Super | $0.00 | $300.00 |
| Home Depot | $371.11 | 12/01/16 Visa 8366 | | Supplies | $30.25 | $371.11 |
| Home Depot | $65.02 | 12/01/16 Visa 8366 | | Supplies | $5.30 | $65.02 |
| Home Depot | $187.56 | 12/05/16 Visa 8366 | | Supplies | $15.29 | $187.56 |
| Home Depot | $164.54 | 12/06/16 Visa 8366 | | Supplies | $13.41 | $164.54 |
| Home Depot | $205.16 | 12/07/16 Visa 8366 | | Supplies | $16.72 | $205.16 |
| Monagri Home Improvement | $3,150.00 | | | Construction | $0.00 | $3,150.00 |
| BK NYC Construction | $300.00 | 01/01/17 Credit | | Super | $0.00 | $300.00 |
| BK NYC Construction | $300.00 | 02/01/17 Credit | | Super | $0.00 | $300.00 |
| BK NYC Construction | $300.00 | 03/01/17 Credit | | Super | $0.00 | $300.00 |
| Home Depot | $45.90 | 03/25/17 Debit 3826 (Ismail Cash) | | Supplies | $3.74 | $45.90 |
| Tru Waves Construction | $18.97 | 05/26/17 Debit 3826 (Ismail Cash) | | Supplies | $0.00 | $18.97 |
| Tru Waves Construction | $6,550.00 | 03/13/17 Check | | Construction | $0.00 | $6,550.00 |
| BK NYC Construction | $300.00 | 04/01/17 Credit | | Super | $0.00 | $300.00 |
| Home Depot | $92.84 | 05/27/17 Debit 3826 (Ismail Cash) | | Supplies | $7.57 | $92.84 |
| Tru Waves Construction | $700.00 | 05/27/17 Check 826 (326 Quincy) | | Labor | $0.00 | $700.00 |
| New York Plumbing & Sewer Rooter | $1,550.00 | 05/28/17 Cash | | Service | $0.00 | $1,550.00 |
| Home Depot | $128.68 | 05/27/17 Debit 3826 (Ismail Cash) | | Supplies | $10.48 | $128.68 |
| BK NYC Construction | $300.00 | 06/01/17 Credit | | Super | $0.00 | $300.00 |
| Home Depot | $190.43 | 06/02/17 Debit 5567 | | Supplies | $15.52 | $190.43 |
| Home Depot | $352.25 | 06/09/17 Debit 3826 (Ismail Cash) | | Supplies | $28.71 | $352.25 |
| Home Depot | $288.41 | 06/11/17 Debit 3826 (Ismail Cash) | | Supplies | $23.51 | $288.41 |
| Home Depot | $345.29 | 06/11/17 Debit 3826 (Ismail Cash) | | Supplies | $28.14 | $345.29 |
| Home Depot | $299.74 | 06/12/17 Debit 3826 (Ismail Cash) | | Supplies | $20.07 | $299.74 |
| Home Depot | $92.06 | 06/12/17 Debit 3826 (Ismail Cash) | | Supplies | $3.43 | $92.06 |
| Home Depot | $177.73 | 06/12/17 Debit 3826 (Ismail Cash) | | Supplies | $10.41 | $177.73 |
| Home Depot | $180.17 | 06/12/17 Debit 3826 (Ismail Cash) | | Supplies | $14.68 | $180.17 |
| Home Depot | $86.01 | 06/12/17 Debit 3826 (Ismail Cash) | | Supplies | $7.01 | $86.01 |
| Timing HVAC | $1,200.00 | 06/14/17 Check 756 (326 Quincy) | | Repairs | $0.00 | $1,200.00 |
| Con Ed | $1,000.00 | 06/19/17 Amex 5005 | | Utilities | $0.00 | $1,000.00 |
| PC Richards | $6,116.61 | 06/28/17 Check 835 (326 Quincy) | | Appliances | $498.61 | $6,116.61 |
| BK NYC Construction | $300.00 | 07/01/17 Credit | | Super | $0.00 | $300.00 |
| | | | | | | |
| **Tax Total** | | | | | **$1,190.17** | |
| **Expense Total (Including tax)** | | | | | **$36,523.36** | |
| | | | | | $37,713.53 | $36,523.36 |

| Vendor | Date | Payment type | Type | Sub Total |
|---|---|---|---|---|
| Charles Zizi | 02/11/16 | Check 1081 (650 Decatur) | Tenant Settlement | $6,600.00 |
| Phoenix Holdings | 03/23/16 | Check 955 (Zahax) | Attorney Taxes | $5,000.00 |
| Phoenix Holdings | 04/25/16 | Check 837 (Zahax) | Loan | $5,000.00 |
| Phoenix Holdings | 05/11/16 | Check 967 (Zahax) | Personal Loan | $35,000.00 |
| Phoenix Holdings | 08/04/16 | Check 4163 (Maximus) | Loan | $40,000.00 |
| Phoenix Holdings | 11/16/16 | Check 1210 (Zahax) | Attorney Fees | $10,000.00 |
| | | | | $6,600.00 |
| | | | | $5,000.00 |
| | | | | $5,000.00 |
| | | | | $35,000.00 |
| | | | | $40,000.00 |
| | | | | $10,000.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| Total | | | | |

| Payment Total | $101,600.00 |
|---|---|

EXHIBIT 8

**Fill in this information to identify the case:**

Debtor 1    Green Group 11 LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court    Eastern District of New York

Case number:  19-40115

FILED

U.S. Bankruptcy Court
Eastern District of New York

4/17/2019

Robert A. Gavin, Clerk

Official Form 410
# Proof of Claim
04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:  Identify the Claim

**1. Who is the current creditor?**
Charles Zizi
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?
Charles Zizi
Name
180-15 Jamaica Ave
1st Floor
Jamaica, NY 11432

Contact phone    2123654730
Contact email    hans.c.zizi@phoenixNYLLC.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

Where should payments to the creditor be sent? (if different)
Name

Contact phone
Contact email

**4. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known)          Filed on
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing?

Official Form 410          Proof of Claim          page 1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| 7. How much is the claim? | $ 86800.00      **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Refusal to pay me my 40% share or rents collected |

| | |
|---|---|
| 9. Is all or part of the claim secured? | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☐ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>Basis for perfection: _____<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>Value of property:      $ _____<br><br>Amount of the claim that is secured:      $ _____<br><br>Amount of the claim that is unsecured:      $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>Amount necessary to cure any default as of the date of the petition:      $ _____<br><br>Annual Interest Rate (when case was filed)      _____ %<br>☐ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____ |

| | |
|---|---|
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410                    Proof of Claim                    page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | | Amount entitled to priority |
|---|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ _____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | | $ _____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3:  Sign Below

| The person completing this proof of claim must sign and date it. FRBP 9011(b).<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.<br>18 U.S.C. §§ 152, 157 and 3571. | Check the appropriate box |
|---|---|

Check the appropriate box

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    4/17/2019
         MM / DD / YYYY

/s/ Charles Zizi
_____
Signature

Print the name of the person who is completing and signing this claim

Name      Charles Zizi

        First name    Middle name    Last name

Title

Company

     Identify the corporate servicer as the company if the authorized agent is a servicer

Address    180 15 Jamaica Ave

     Number   Street
     Jamaica, NY 11432

     City   State   ZIP Code

Contact phone    212 365 4730      Email    hans.c.zizi@phoenixNYLLC.com