Law Office of Ira R. Abel
305 Broadway
14th Floor
New York, NY 10007
Phone: (212) 799-4672
iraabel@verizon.net
Ira R. Abel, Esq.

*Counsel for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
**In re:**

          **Green Group 11 LLC,**

                                   **Debtor.**

------------------------------------------------------------------------x

                      **Chapter 11**

                      **Case No. 19-40115-nhl**

**DEBTOR'S OPPOSITION TO MOTION OF CHARLES ZIZI TO (A) DISMISS THE BANKRUPTCY CASE, (B) COMPEL MICHAEL KANDHOROV TO ABIDE BY THE TERMS OF AN AGREEMENT, (C) APPOINT A RECEIVER TO OBTAIN A FULL ACCOUNTING OF RENTAL INCOME AND (D) REVERSE A FRAUDULENT DEED TRANSFER OF 850 GREENE AVENUE**

**TO THE HONORABLE NANCY HERSHEY LORD,**
**UNITED STATES BANKRUPTCY JUDGE:**

       Green Group 11 LLC, the debtor and debtor-in-possession herein (the "Debtor"), by its counsel, the Law Office of Ira R. Abel, respectfully states as follows:

### SUMMARY OF OPPOSITION

       1.      By his motion, dated May 1, 2019 (ECF Doc. No. 33, the "Motion") Charles Zizi ("Zizi") has requested this Court to (a) dismiss the bankruptcy proceedings, (b) compel Michael Kandhorov to abide by the terms of an agreement, (c) appoint a receiver to obtain full accounting of rental income and (d) reverse an allegedly fraudulent deed transfer of real property located at 850 Greene Ave., Brooklyn, NY.  Zizi also requests that this Court sanction the Debtor for its allegedly fraudulent actions.

2.      First, the Motion is procedurally deficient and can be denied for that reason alone. *See, e.g.*, Local Bankruptcy Rule 9013-1.  There is absolutely no factual or legal basis for the Court to grant the requested relief, some of which is expressly prohibited by the Bankruptcy Code and some other of which may only be obtained through a properly commenced adversary proceeding.

3.      Second, the documents that Zizi uses as factual support for his Motion do not, under any possible reading, support it. Zizi simply offers conclusory allegations and conjecture to support his Motion.

4.      By this opposition (the "Opposition"), the Debtor respectfully submits that Zizi has not set forth any basis for this Court to grant his requested relief, and the Motion must be denied.

## **BACKGROUND**

5.      On January 8, 2019 (the "Petition Date"), the Debtor commenced its chapter 11 case in the Eastern District of New York by filing a petition (the "Petition") under chapter 11 of title 11, U.S. Code (the "Bankruptcy Code") as well as schedules of assets and liabilities and a statement of financial affairs (collectively, the "Schedules").

6.      The Debtor operates a business with a mailing address of 1202 Halsey Street Brooklyn, NY 11207. The Debtor's principal assets are located at 220 Greene Avenue, Brooklyn, New York 11238, Block 1966, Lot 107 (the "220 Greene Property"). The Debtor also holds a contingent future interest in the proceeds of sale of real property located at 850 Greene Avenue, Brooklyn NY, 11221, Block 1620, Lot 40 (the 850 Greene Property, with the 220 Greene Property, the "Properties").

7.      The Debtor commenced its chapter 11 case because of a pending Sherriff's sale against the 220 Greene Property.

2

8.      The Debtor is authorized to remain in possession of its property and to continue in the operation and management of its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

9.      No official committee of unsecured creditors has yet been appointed by the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"). No trustee has been appointed.

10.      On April 5, 2019, the Debtor filed a plan of reorganization and supporting disclosure statement (ECF Doc. Nos. 26 and 27).

## BACKGROUND SPECIFIC TO THIS MOTION

The Judgment

11.      By short form order, dated December 4, 2008, Florida Corporate Funding, Inc. ("FCF") was granted a judgment (the "Judgment") on default against, among others, Charles Zizi ("Zizi"), in the total amount of $1,893,662.43, and on February 11, 2009 the Nassau County Clerk's Office issued the Judgment in that amount. The Judgment is believed to be held by FCF and a copy is annexed as Exhibit 1.

12.      Through the Judgment, FCF seeks to collect money owed to it by Zizi, among others.

Charles Zizi

13.      Charles Zizi is a convicted felon. *Florida Corp. Funding, Inc. v Always There Home Care, Inc.*, 2011 N.Y. Misc. LEXIS 1471 (Sup Ct, Nassau County 2011).  In that opinion, Justice Ira B. Warshawsky found, among other things, as follows:

> [I]n Nassau County in a 40-count Indictment dated September 2007, Zizi was accused of *inter alia* various felonies, including, forgery, identity theft, grand larceny, [and] money laundering. Zizi later entered a guilty plea to, *inter alia* grand larceny, and was sentenced to restitution and a stated prison term.

*Florida Corp. Funding* at *20.

The 2015 Agreement.

14.     On or about December 24, 2015 (the "2015 Agreement"), Michael Kandhorov ("Kandhorov"), Zizi and RCM Group ("RCM")[1] entered into an agreement through which, among other things, Zizi and RCM would (a) convey the 850 Green Property and the 220 Green Property (together, the "Properties") to the Debtor, (b) clear and quiet title to the Properties, (c) enter into a mutually beneficial partnership for the improvement and/or repair of the Properties, (d) sell the Properties for a possible profit and disburse the proceeds amongst their respective interests and (e) create the Debtor. A copy of the 2015 Agreement is annexed as Exhibit 2.

15.     The 2015 Agreement expressly set forth the equity interests in the Debtor:

> The parties acknowledge that a new limited liability company has been formed. The name of the company is Green Group 11 LLC ("Green Group"). The costs associated with formation of the company were be [sic] borne by Michael [Kandhorov].
> a.     The members of the new company shall be [Charles] Zizi and Michael, Zizi holding 40% and Michael holding 60% respectively. Michael shall be the sole managing member of the company. In consideration for Michaels' 60%, Michael shall deposit into Green Group $102,500 for the sole purpose of purchasing the premises. In consideration of Zizi's 40%, Zizi agrees to provide cooperation, assistance and aid in the improvement and/or repair of the premises.

2015 Agreement at ¶ 7.

16.     Zizi acknowledged that he had "entered into previous understandings" related to the conveyance of the Properties, 2015 Agreement at 1, and as a result, the Properties had clouds on their respective titles. *Id.*

---

[1] Upon information and belief, (a) RCM Group, Inc. ("RCM") is a New York Corporation with a Department of State Service of Process address at 11 East 1st Street, Suite 424, New York, NY, 10003 and (b) Zizi is the sole shareholder and President of RCM.

17.    Upon the clearing and quieting title to the Properties, they would both immediately vest in the Debtor. 2015 Agreement at ¶ 8.

The Operating Agreement.

18.    On or about January 19, 2016, Kandhorov and Zizi executed the Operating Agreement annexed hereto as Exhibit 3 (the "Operating Agreement," together with the 2015 Agreement, the "Agreements"). Under the Operating Agreement, Kandhorov held sixty percent (60%) of the equity interests in the Debtor and Zizi held forty percent (40%). Operating Agreement at 13. Kandhorov provided all of the capital contributions, and Zizi contributed "sweat equity." Operating Agreement at 1. The Debtor was formed to purchase and manage the Properties.[2]

19.    Article 5.1(A) of the Operating Agreement, entitle "Allocation of profits and losses," provides that

> Except as otherwise provided herein, net profits and losses of the [Debtor] (including profits and losses attributable to the sale, refinance or other disposition of all or any portion of the [Debtor]'s property) shall be first allocated among or borne by the Members to reduce the balance of Members Initial Capital contribution by one hundred percent. All net profits and losses above the Members initial Capital contribution shall be allocated in the percentages listed in Exhibit A, which is attached hereto and made a part hereof, *or in accordance with their equity interest in the [Debtor],* as those may change as provided herein.

Operating Agreement at Article 5.1(A), emphasis added.  Kandhorov is the only member that contributed funds to the Debtor. Zizi defaulted on his "sweat equity" required under the Agreements.

20.    Exhibit A to the Operating Agreement sets forth the members' equity interests as Kandhorov: sixty percent (60%) and Zizi: forty percent (40%). As provided in the Operating Agreement, therefore, the Debtor was entitled to receive *all* of the

---

[2] The 850 Green Property was ultimately transferred from the Debtor to another company, 1412 Herkimer LLC.

proceeds of sale of the 850 Greene Property, which would then (absent the Debtor's bankruptcy case) be divided between Kandhorov and Zizi on a 60/40 split.

21.     Thus, when the Agreements were executed, the Debtor owned both of the Properties and was entitled to receive all proceeds of sale.

The 2016 Agreement.

22.     On or about September 1, 2016 (the "2016 Agreement"), Zizi, RCM, Shabsi Pfeiffer ("Pfeiffer")[3] and 10821 Holdings L.L.C ("10821") entered into a settlement agreement, a copy of which is annexed hereto as Exhibit 4.   Among other things, the 2016 Agreement stated in relevant part:

> Contemporaneous with the execution of this Agreement, 10821 Holdings L.L.C. shall sell 220 to Green Group 11, LLC, with an address of 1202 Halsey Street, Brooklyn, NY 11207 and EIN: 81-0727295 for $140,000. Green Group 11, LLC shall provide a bank check in the sum of $140,000 made payable to 10821 Holdings L.L.C. and 10821 Holdings L.L.C. shall execute a deed, transfer documents and corporate resolution (Exhibit "7") transferring 220 to Green Group 11, LLC.

2016 Agreement at ¶4.

The Zizi Chapter 7 Case.

23.     On October 28, 2016, an involuntary chapter 7 petition was filed against Zizi by, among others, FCF.  The chapter 7 case was dismissed by order, filed May 8, 2018 (ECF Doc. No. 111 in 16-44872-ess). Zizi was not granted a discharge in that case.

## LEGAL BASES FOR OPPOSITION

Opposition to Motion to Dismiss the Debtor's Bankruptcy Case.

24.     Procedural Bases for Opposition.

a.  Rule 2002(a) of the Bankruptcy Rules states in relevant part:

---

[3] At the time of execution of the 2016 Agreement, (a) Pfeiffer was the managing member of 10821.

> **Twenty-one-day notices to parties in interest**. Except as [otherwise] provided . . . the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail of:
>
> . . . .
>
> (4) in a . . . a chapter 11 reorganization case . . . the hearing on the dismissal of the case . . .

Bankruptcy Rule 2002(a)(4).

b.  Section 1112(b) provides, in part, that

> the Court shall dismiss a case for cause "after notice and hearing." Section 102, entitled "Rules of Construction," defines "after notice and a hearing" as "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances.'" Bankruptcy Rule 2002 requires that twenty-days notice by mail[4] be given to the debtor of "the hearing on the dismissal of the case or the conversion of the case to another chapter . . . "

*Guretzky v. Wallace (In re Wallace),* 2008 Bankr. LEXIS 5151, *18-19 (Bankr. E.D.N.Y. 2008), quoting *In re Munteanu*, 2007 U.S. Dist. LEXIS 48233, 2007 WL 1987783 *3 (E.D.N.Y. 2007) (internal citations omitted, footnote added).

c.  Upon a review of the case docket on May 22, 2019, there is no indication that Zizi provided notice to anyone, inasmuch as no affidavit or certificate of service was filed as of that date.

Legal Bases for Opposition

25.  Section 1112 of the Bankruptcy Code states in relevant part:

> Except as [otherwise] provided . . . on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter whichever is in the best interests of creditors and the estate, for cause . . .

11 U.S.C. § 1112(b)(1).

26.  Zizi asserts that dismissal is required because of the following "causes:"

---

[4] The twenty day notice provision was later amended to provide for 21 days notice, as set forth above.

    a.  He received no notice of the commencement of the case;

        i.  Zizi was listed on the affidavit of service of the 341 Notice.  ECF Case Doc. Nos. 6, 7.

    b.  Kandhorov stated that there was a meeting of the shareholders on January 8, 2019 and he was not contacted;

        i.  As plainly set forth in the Operating Agreement, Kandhorov has sole management responsibilities for the Debtor.  Operating Agreement at ¶ 2.1.[5]  Zizi has, at best "sweat equity," which is not management responsibility.

    c.  Kandhorov claimed full ownership of the Debtor;

        i.  The List of Equity Security Holders originally filed was incorrect.  An amended List was filed on February 13, 2019 (ECF Doc. No. 15) showing the correct percentages of ownership.  The Debtor listed Zizi's ownership as disputed.

    d.  Kandhorov mailed notices to an incorrect address for Zizi;

        i.  The notice of the 341 meeting was mailed to Charles Zizi, 220 Greene Avenue Brooklyn, NY 11238, the only address for him at the time (ECF Doc. No.4-1);

---

[5] Section 2.1 states: The Manager is Michael Kandhorov. He and all subsequent Managers shall be Members and shall be solely responsible for the management of the Company's day to day business. He shall possess all rights and powers generally conferred by law and all rights and powers that are necessary, advisable or consistent in connection therewith and with the provisions of this Agreement. A majority vote of the Managers shall bind all of the Managers with respect to any major decisions. The Managers shall also be vested with all specific rights and powers required for or appropriate to the management, conduct or operation of the business of the Company. Except for distributions made to Members as set forth in this Agreement and any fees for specific management services, the Managers shall receive no compensation from the Company for their actions taken as Managers pursuant to this Agreement.

    ii.   The notice of deadline for filing proofs of claim was mailed to Charles Zizi, 10260 SW 16th Ct., Pembroke Pines, FL 33025. Zizi received this notice inasmuch as he filed a claim with the Court. *See* Claim 7 on the Creditor Register maintained by the Clerk of the Court.

    iii.   The Debtor has discovered two additional addresses for Zizi: (A) Charles Zizi, 180-15 Jamaica Avenue, Jamaica, NY 11432 and (B) Charles Zizi, 315 Flatbush Ave. Suite 424, Brooklyn, NY 11217. The Jamaica Avenue address is set forth on Zizi's proof of claim and will be added to the service list for the case unless he files a change of address with the Court.

e.  Kandhorov has no authority to negotiate or intervene with US Bank;[6]

    i.   US Bank asserts that it holds a mortgage on the 220 Greene Property.  ECF Doc. No. 32.  The Debtor has every right to negotiate with its secured creditors to restructure its debts and Kandhorov is charged with that responsibility under the Operating Agreement. It is not clear why Zizi would object to payment or other satisfaction of all or any part of his obligation by the Debtor or a third party, however.

f.  Zizi opposes the bankruptcy filing because he wants to negotiate with US Bank;

    i.   Zizi is free to negotiate with US Bank. However, under the 2015 Agreement and the Operating Agreement, he has no authority to bind the Debtor.

---

[6]Zizi is likely referring to U.S. Bank National Association as Legal Title Trustee for Truman 2016 SC6 Title Trust, successor in interest to Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, not in its individual capacity but as Trustee of ARLP Trust 5, successor in interest to Countrywide Home Loans Inc. (hereinafter, "US Bank"), one of the Debtor's secured creditors.

g.  The Debtor has intentionally misled the Court.

i.  The Debtor has never intentionally misled the Court. Zizi's statement is false.

Motion at 1 – 2 (entitled "Dismiss the Bankruptcy Proceedings Initiated by Michael Kandhorov [sic] On Behalf Of Green Group 11 LLC").

27.     None of Zizi's allegations and assertions even come close to the 16 specific causes set forth in § 1112 or otherwise set forth any legitimate "cause" for any of the relief he seeks that could be recognized by this Court.

<u>Motion to Compel Kandhorov to Abide by the Terms of an Agreement</u>.

28.     Zizi requests that this Court compel Kandhorov to comply only with the terms of the 2015 agreement, since he refers only to the agreement signed on December 24, 2015.  Motion at 3 (entitled "Compel Michael Kandhorov and Green Group 11 LLC to Abide by the Terms of the Agreement Signed with Charles Zizi").

29.     In the first instance, Zizi is plainly raising questions of contract interpretation, as well as a request for money damages. Of necessity, those requests will require an trial after a properly commenced and litigated adversary proceeding.  Moreover, requests to recover money or property, or requests to compel a party to take, or forbear from taking, any action must be brought by adversary proceeding under Rule 7001, not by motion.  *In re McRae*, 181 B.R. 866, 868 (Bankr. S.D. TX 1994) ("[T]his action was brought through a "Motion to Compel" by the Liquidating Trustee. Per Bankruptcy Rule 7001(1) this type of action should be brought as an adversary proceeding."); *In re Billick*, 67 B.R. 670, 671 (Bankr. W.D.MO 1986).

30.     The Court cannot grant these requests to Zizi in the current posture, and the portions of the Motion that request this relief should be denied.

10

<u>Motion to Reverse the Fraudulent Deed Transfer of the 850 Greene Property.</u>

31.     Zizi asserts that Kandhorov fraudulently transferred the 850 Greene Property to another entity. Motion at 4 (entitled "Reverse the Fraudulent Deed Transfer of 850 Greene Ave").

32.     As set forth above, the 850 Greene Property was sold at a sheriff's sale on January 9, 2019. The Debtor asserts a contingent unliquidated interest in the proceeds of the sale of the 850 Greene Property.  To the extent that any funds are recovered from the sale, they become property of the Debtor under the 2015 Agreement and the Operating Agreement. Thus, any sale of the 850 Greene Property would have benefitted Zizi absent (a) the attachment of his assets by FCF, (b) the Debtor's chapter 11 case and (c) the dispute over Zizi's equity security interest.

33.     In any event, the proceeds from the sale of the 850 Greene Property were to be distributed to Zizi's and Kandhorov' s respective interests in the Debtor.

> **Upon** the sale of the premises, the net proceeds thereof shall be distributed as to Zizi's and Michael's respective interests in Green Group, with Michaels' costs and disbursements as per [the 2015] agreement, to be reimbursed to him first before such net proceeds are disbursed.

2015 Agreement at ¶ 8c.

34.     As set forth in the 2015 Agreement, Kandhorov had contributed $102,500 to the Debtor to fund the purchases of the Properties. 2015 Agreement at ¶ 7a.  Zizi did not contribute any money to the Debtor and defaulted on his "sweat equity."

<u>Motion to Appoint a Receiver.</u>

35.     Zizi has requested that the Court appoint a receiver to demand a full accounting. Motion at 5 (entitled "Appoint a Receiver to Obtain a Full Accounting of Rental Income Collected by Michael Kandhorov from 220 Greene Ave.").

Case 1-19-40115-nhl    Doc 36    Filed 05/23/19    Entered 05/23/19 11:44:52


36.     This Court is forbidden from appointing a receiver. 11 U.S.C. § 105(b).

37.     Requests for accounting can only be obtained through an adversary proceeding under Rule 7001. *In re Residential Capital, LLC*, 2014 Bankr. LEXIS 2551 at *34 (Bankr. S.D.N.Y. 2014) ("Accounting is generally considered to be an equitable remedy."), citing *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. Appx. 707, 709 (5th Cir. 2007); *In re Mitchell*, 44 B.R. 485, 491, ( Bankr. N.D.AL 1984) ("Bankruptcy Rule 7001 also provides that a proceeding in a bankruptcy court "to obtain . . . . other equitable relief is an adversary proceeding." A proceeding to obtain an accounting is generally an equitable proceeding.").

## Motion for Sanctions

38.     Zizi also asks the Court to sanction all parties involved in the Debtor's case. Motion at 1 – 2 (entitled "Dismiss The Bankruptcy Proceedings Initiated By Michael Kandhorov [sic] On Behalf Of Green Group 11 LLC").

39.     Sanctions may be imposed under this Court's general authority under § 105 as well as Bankruptcy Rule 9011.   Section 105 permits the Court to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Code. See § 105(a); *Law v. Siegel*, 571 U.S. 415, 134 S. Ct. 1188, 1194, 188 L. Ed. 2d 146 (U.S. 2014). Moreover, Rule 9011 requires that a motion for sanctions be made separately from other motions or requests and shall describe the specific conduct alleged to violate Rule 9011(b), and a "safe harbor" letter must be served upon the party within 21 days after service of the motion.   As mentioned above, Zizi has not complied with any of the notice requirements either under § 105 or Rule 9011, and his request cannot be granted.

40.    Zizi has not met the procedural requirements for this Court to impose sanctions, and has not come close to setting forth any factual basis for the Court to make that determination. His request for sanctions is likely frivolous and should be denied.

**WHEREFORE**, the Debtor respectfully requests that Zizi's Motion be denied in full.

Dated: New York, New York
        May 23, 2019

                                Law Office of Ira R. Abel
                                *Counsel for the Debtor*


                                By:____/s/____Ira R. Abel_____
                                        Ira R. Abel, Esq.
                                305 Broadway
                                14th Floor
                                New York, NY 10007
                                Phone: (212) 799-4672
                                iraabel@verizon.net

Index of Exhibits

Exhibit 1: Judgment
Exhibit 2: 2015 Agreement
Exhibit 3: Operating Agreement
Exhibit 4: 2016 Agreement