# Exhibit 2: 2015 Agreement

# AGREEMENT BETWEEN CHARLES ZIZI AND MICHAEL KANDHOROV

THIS AGREEMENT is entered into by Charles Zizi ("Zizi"), RCM Group ("RCM") and Michael Kandhorov ("Michael").

## PREAMBLE

On or about November 2015, Zizi and Michael were acquainted with one another. Zizi had represented to Michael that he desires to sell and convey his properties to him, namely 220 and 850 Greene Avenue, Brooklyn New York ("the premises"). He had also represented to Michael that he had entered into previous understandings with another for the sale and conveyance of Zizi's premises and as a consequence, these premises have a cloud on their respective titles. Lastly, Zizi had represented to Michael that these clouds on title are unwarranted.

Through their respective attorneys, and after extensive negotiations and considerations as to the circumstances regarding the premises and as to the terms of this agreement, Zizi and Michael desire to enter into this agreement for (1) the purpose of clearing and quieting title to the premises, (2) to then enter into a mutually beneficial partnership for the improvement and/or repair of the premises, and (3) to then sell the premises for a possible profit and disburse the proceeds amongst their respective interests.

## PARTIES

Charles H. Zizi ("Zizi") is a natural person residing at 10260 SW 16th Ct., Pembroke Pines, Fl 33025.

RCM Group, Inc. ("RCM") is a New York Corporation with a Department Of State Service of Process address at 11 East 1st Street Ste 424 New York, NY, 10003. Charles H. Zizi is the sole shareholder and President of RCM.
Zizi represents that RCM is in full compliance of all Federal, State, City and Local laws and regulations applicable to it and that it has no debt other than the mortgage on 850 Green Avenue, Brooklyn, NY, which is currently in default and the subject of a mortgage foreclosure proceeding.

Michael Kandhorov ("Kandhorov") is a natural person with an office address at 1202 Halsey Street Brooklyn, New York 11207. Kandhorov is the sole member and Manager of Green Group 11 LLC ("Green Group"), a New York limited liability company with a federal tax identification number of 81-0727295. Green Group has a New York Department Of State Service of Process address at 1202 Halsey Street Brooklyn, New York 11207. Kandhorov represents that Green Group is in full compliance of all Federal, State, City and Local laws and regulations applicable to it and that it has no debt.

## AGREEMENT BETWEEN CHARLES ZIZI AND MICHAEL KANDHOROV

**ZIZI, RCM, AND MICHAEL AGREE AS FOLLOWS:**

1. **CONSIDERATION.** In consideration of Zizis' and RCMS' cooperation, assistance, and aid in quieting and clearing title to the premises, Michael shall advance all costs and disbursements associated with any action required in furtherance of quieting and clearing title to the premises, including but not limited to advancing the costs and disbursements for the following cases:

    a. RCM Group Inc. v. 10821 Holdings LLC, index number 13345/2014

    b. Zizi v. 10821 Holdings LLC, index number 14062/2014.

2. **ZIZI'S REPRESENTATIONS AND OBLIGATIONS.** Zizi understands that Kandhorov has specifically relied upon the truth and accuracy of Zizi's warranties and representations in this Agreement as a special inducement in the making and execution of this Agreement, such that without said warranties and representations having been made by Zizi and Kandhorov's reliance thereon, Zizi would not have made and/or executed this Agreement. Zizi represents and warrants the following:

    a. That 10821 Holdings LLC defrauded him into executing a deed to the Properties and that he did not received the benefit of the bargain that he made with it, as Zizi has represented to the Court in the Litigation.

    b. Zizi represents that in the course of the Litigation he executed a settlement agreement that was meant to dispose of the Litigation, but that 10821 Holdings LLC breached that agreement.

    c. Zizi represents that he received a total of not more than $100,000 in the course of two years from 10821 Holdings LLC after executing that settlement agreement. Zizi understands and agrees that any money that may be repaid to 10821 Holdings LLC in connection with the Litigation shall be an expense borne by Michael, on behalf of Green Group. Zizi agrees not to accept any further payments from 10821 Holdings LLC.

    d. Zizi represents that he is the sole shareholder and President of RCM and that he has not encumbered the company or the Properties in any way other than what is set forth herein.

    e. Zizi understands and agrees that any money that may be required to clear title to the Premises after a successful conclusion to the Litigation shall be borne by Michael.

3. **ZIZI'S RIGHTS AND RESPONSIBILITIES.** Throughout the effectiveness of this Agreement, Zizi shall have the following rights and responsibilities:

2

## AGREEMENT BETWEEN CHARLES ZIZI AND MICHAEL KANDHOROV

     a. Receive regularly accurate and complete information and documentation regarding the timing and amounts of expenditures of the funds Kandhorov and Green Group provide hereunder, and

     b. Receive regular progress updates, and

     c. Review all required permits, filings, plans, inspections, approvals and other documentation required for construction, and

     d. Inspect the Premises on a daily basis, and

     e. Assume legal physical control of the Premises in the event of Kandhorov's default hereunder, and

     f. Request and receive from Kandhorov and Green Group any reasonable assistance in connection with his participation in this Agreement.

     g. Zizi shall cooperate in all aspects of the Litigation and be truthful in all representations to counsel and before the Court.

     h. Zizi shall cooperate and participate in negotiations with any alleged lien holders so as to reduce the amount of money that must be paid to settle those alleged liens.

     i. he shall use his best efforts to diligently and fully cooperate with Green Group, Michael and personally perform such activities and services as are necessary to complete the premises and resell the Premises for maximum profit, and he shall not do, participate in, perform or authorize to be performed in their name, any action or act, undertake any obligation the result of which would be to prevent, encumber, limit or prohibit the performance or fulfillment of any obligations of Green Group, toward Michael or under this Agreement.

**4. RCM REPRESENTATIONS, OBLIGATIONS, RIGHTS AND RESPONSIBILITIES.** RCM understands and agrees that it shall undertake and make the same representations, obligations, rights, and responsibilities as its' principal Zizi.

**5. KANDHOROV'S REPRESENTATIONS AND OBLIGATIONS.** Kandhorov represents and warrants the following, which are an inducement to Zizi and RCM entering into this agreement:

     a. That upon taking title to the Premises, and in connection with the premises, he shall use his best efforts to diligently and fully direct Green Group and personally perform such activities and services as are necessary to complete the premises and resell the Premises for maximum profit, and he shall not do, participate in, perform or authorize to be performed in their name, any action or act, undertake any obligation the result of which would be to prevent, encumber, limit or prohibit the performance or fulfillment of any obligations of Green Group, toward Zizi, RCM or under this Agreement.

3

AGREEMENT BETWEEN CHARLES ZIZI AND MICHAEL KANDHOROV

b.  He shall cover from his own funds any obligations of Green Group under this Agreement, specifically those relating to the negotiation settlement and extinguishing of any alleged liens imposed on the Premises, all of which shall be an expense of Green Group and the premises to be repaid upon the sale of the Premises. Kandhorov will not be obligated to settle any such lien or encumbrance until and unless title to the Premises has transferred to Green Group, but do so in his discretion.

**6. Rights, Obligations, and Responsibilities Enforced.** The parties rights, obligations, and responsibilities under this agreement shall be construed liberally so to allow the either party to enforce the provisions of such agreement efficiently and in furtherance of the purpose of this agreement.

**7. FORMATION OF NEW ENTITY.** The parties acknowledge that a new limited liability company has been formed. The name of the company is Green Group 11 LLC ("Green Group"). The costs associated with formation of the company were be borne by Michael.

a.  The members of the new company shall be Zizi and Michael, Zizi holding 40% and Michael holding 60% respectively. Michael shall be the sole managing member of the company. In consideration for Michaels' 60%, Michael shall deposit into Green Group $102,500 for the sole purpose of purchasing the premises. In consideration of Zizi's 40%, Zizi agrees to provide cooperation, assistance and aid in the improvement and/or repair of the premises.

**8. CLEARING TITLE/SALE OF PREMISES.** Upon the clearing and quieting of title to the premises, title to the premises shall immediately vest with Green Group in consideration for $102,500 collectively, $51,250 as consideration for each property. A general warranty deed from Zizi to Green Group for 220 Greene Avenue shall be signed together with this agreement and shall be held by the attorney for Zizi. A general warranty deed from RCM to Green Group LLC for 850 Greene Avenue shall be signed together with this agreement and shall be held by the attorney for RCM. Zizi, within 7 days of title vesting with Green Group, shall send both the general warranty deeds via express one-day mail to the Attorney for Michael.

a.  Upon the rights to the premises vesting with Green Group, Green Group shall begin improving and/or renovating the premises.

b.  After the premises' improvement and/or renovation are complete, Green Group shall, within 15 days offer the premises for sale at its' fair market value. Zizi, RCM and Michael shall cooperate as may be required to bring about such a sale. In the event Michael and Zizi cannot obtain the fair market value for the premises, Zizi,

4

AGREEMENT BETWEEN CHARLES ZIZI AND MICHAEL KANDHOROV

RCM and Michael shall use their best efforts to obtain rental income from the premises, of which shall be divided amongst them pursuant to their respective interests in Green Group.

c.  Upon the sale of the premises, the net proceeds thereof shall be distributed as to Zizi's and Michael's respective interests in Green Group, with Michaels' costs and disbursements as per this agreement, to be reimbursed to him first before such net proceeds are disbursed.

d.  Upon the disbursement of the net proceeds, the parties agree that the company shall be dissolved and this agreement shall be deemed fully complied thereto.

**9. ADVANCE PAYMENT ACKNOWLEDGMENT.** Zizi acknowledges that Michael has advanced monies to Zizi for the purchase of the premises in the following amounts:

a.  $50,000 via several business checks disbursed by Michael to Zizi between November and December 2015. $50,000, of which $25,000 is for 220 Greene Avenue and $25,0000 is for 850 Greene Avenue.

b.  $50,000 via a business check disbursed by Michael to Zizi on the signing of this agreement. $50,000, of which $25,000 is for 220 Greene Avenue and $25,000 is for 850 Greene Avenue.

e.  At the time the title vests with Green Group and after receipt of the deed pursuant to paragraph 8 of this agreement, Michael, on behalf of Green Group, shall disburse the remaining $2,500 and shall send the same to the Attorney for Zizi. $2,500, of which $1,250 is for 220 Greene Avenue and $1,250 is for 850 Greene Avenue.

f.  These advances are non-refundable.

**10. NON-DISCLOSURE.** Both parties agree that during the life of this agreement and through and including the conveyance of the premises the

a.  use of any confidential information for personal pecuniary gain of any sort directly or indirectly other than for or on behalf and benefit of this agreement and in furtherance of the terms of this agreement is strictly prohibited and

b.  disclosing to any person or entity any confidential information other than for or on behalf and benefit of this agreement and in furtherance of the terms of this agreement is strictly prohibited.

AGREEMENT BETWEEN CHARLES ZIZI AND MICHAEL KANDHOROV

11. CONFIDENTIAL INFORMATION. "Confidential Information" shall mean and include any and all Information regarding the premises, this transaction, this agreement, any lawsuits relating to the premises or this agreement, and any oral, written, and electronic messages between Zizi, his agents, and Michael and his agents.

12. DEFAULT. In the event either partys actions or inactions in any manner are in derogation of the terms of this agreement, that party shall be in default of this agreement. In the event of a default, the non-defaulting party must through its' attorney and within 15 days via certified mail, communicate such default to the defaulting party and demand that cure be made within 10 days'. In the event the cure cannot be accomplished within ten days, the allowable cure time cannot exceed 15 days. Within 10 days, the defaulting party shall communicate, via its' attorney and by certified mail, that the default has been satisfied.

13. BREACH. If the Defaulting party fails to send a certified letter indicating that default has been cured within 10 days, the defaulting party shall be in breach of this agreement. In the event of breach, the parties understand and agree that irreparable injury would be caused to the parties by failure to timely comply with the terms of this Agreement; that in the event of any breach of any of the provisions in this Agreement, the party or parties who are aggrieved thereby agree that the appropriate and fair remedy shall be to have the right to specific performance and/or an injunction, as well as monetary damages and any other appropriate relief in law or in equity which may be granted by any court in the United States of America; and that all such rights and remedies shall be cumulative and exclusive.

14. FORFEITURE. In the event of breach of any of the provisions in this Agreement, and in addition to the relief available pursuant to paragraph 13, the breaching party agrees and understands that it shall immediately forfeit 25% of its' stake in Green Group until a judicial determination is made that the breaching party did not commit a breach. Signed contemporaneously with this agreement, both parties shall also sign a resolution transferring 25% of their stake in Green Group to the other, thereby this interest being suspended while in escrow. Zizis' resolution document shall be held in Zizi's attorneys' escrow account and shall be immediately transferred thereto upon a judicial determination that the he is in fact in breach. Michaels' resolution document shall be held in Michaels' attorneys' escrow account and shall be immediately transferred thereto upon a judicial determination that the he is in fact in breach. In the event there is a judicial determination that the breaching party did breach this agreement for any reason, the breaching party shall forfeit 25% of its' stake in Green Group permanently.

15. ATTORNEY FEES. The breaching party shall pay the non-breaching party's reasonable attorneys' fees.

AGREEMENT BETWEEN CHARLES ZIZI AND MICHAEL KANDHOROV

16. **ENTIRE AGREEMENT.** This Agreement contains the entire understanding between the parties and supersedes any prior understandings and agreements between them. There are no representations, agreements, arrangements or understandings, oral or written, between the parties hereto relating to this Agreement, which are not described herein

17. **GOVERNING LAW.** This Agreement shall be governed by the laws of the State of New York.

18. **NO ASSIGNMENT.** Neither party can assign any rights hereunder to another.

19. **ENFORCEABILITY.** If any provision of this Agreement or its application to any person or circumstance shall, for any reason and to any extent, is found to be invalid or unenforceable, the remainder of this Agreement or the application of such provision to other persons or circumstances shall not be affected, but rather shall be enforced to the greatest extent permitted by law.

20. **COUNTERPARTS.** This Agreement may be executed in one or more counterparts by the Parties hereto. All counterparts shall be construed together and shall constitute one agreement

21. **VOLUNTARILY AND KNOWINGLY ENTER INTO THIS AGREEMENT.** The Parties warrant and represent that each has read this Agreement carefully, understand all the terms and conditions set forth herein, and have voluntarily agreed to all the terms and conditions of their own free will without any coercion, duress and undue influence. The Parties further represent and warrant to each other that they: (i) have had the opportunity to review this Agreement with an attorney of their choosing as they desired and fully understand each and every provision of this Agreement and (ii) therefore voluntarily, knowingly and intentionally executed and delivered this Agreement intending to be fully bound hereby, without any threat, harassment, other improper inducement or other improper conduct. (c) It is specifically understood and agreed by the Parties that this Agreement is the result of extensive negotiations between the Parties and both Parties shall be deemed to have drawn these documents in order to avoid any negative inference by any court as against the preparer of the document.

# AGREEMENT BETWEEN CHARLES ZIZI AND MICHAEL KANDHOROV

22. **HEADINGS.** Headings in this Agreement are included herein for the convenience of reference only and shall not constitute a part of this Agreement for any purpose.

**NOW WHEREFORE,** the Parties have caused their signatures to be placed on this Agreement by their duly authorized representatives to signify their assent to be bound and perform their respective obligations hereunder.

Dated: 12/24/15

Charles Zizi

Sworn to me before this 24 day of December 2015

NOTARY

ILEVU YAKUBOV
Notary Public, State of New York
02YA6327144
Qualified in Queens County
Commission Expires June 29, 2018

Dated:

Charles Zizi
Authorized signatory
RCM Group

Sworn to me before this 24 day of December 2015

NOTARY

ILEVU YAKUBOV
Notary Public, State of New York
02YA6327144
Qualified in Queens County
Commission Expires June 29, 2018

Marie Pereira
Attorney for Charles Zizi

1224 Flatbush Avenue

Brooklyn, New York 11226

Dated: 12/24/15

Michael Kandhorov

Sworn to me before this 24 day of December 2015

NOTARY

ILEVU YAKUBOV
Notary Public, State of New York
02YA6327144
Qualified in Queens County
Commission Expires June 29, 2018

Leo Yakubov, Esq.
The Yakubov Law Firm
Attorney for Michael Kandhorov
1202 Halsey Street, Ste. 101
Brooklyn, New York 11207
(718) 772-8704
Leo@YakubovLaw.com

8

